IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs. CASE NO. 1:26-cr-65

DAVID MITSNEFES,

Defendant.

TRANSCRIPT OF PROCEEDINGS

PLEA HEARING

PRESIDING: THE HONORABLE MICHAEL R. BARRETT

DATE: Thursday, July 9, 2026

APPEARANCES:

For the Plaintiff:

DOMINICK S. GERACE II
UNITED STATES ATTORNEY
By: Kyle J. Healey, Esq.
Assistant United States Attorney
United States Attorney's Office
221 E. Fourth Street
Suite 400
Cincinnati, Ohio 45402
(513) 684-3711
kyle.healey@usdoj.gov

For the Defendant:
By: William F. Oswall, Jr., Esq.
The Oswall Firm
119 E. Court Street
Suite 311
Cincinnati, Ohio 45202
(513) 544-2261
willoswall@theoswallfirm.com

Also Present:

Krista Zeller, Courtroom Deputy Clerk
Grace Royalty, Law Clerk
Detective Brandon McKinney

Court Reporter: Caryl L. Blevins, RPR, CRR
Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, Ohio 45202
(937) 512-1511
caryl_blevins@ohsd.uscourts.gov

Proceedings recorded by mechanical stenography, transcript produced by computer.

Thursday, July 9, 2026

2:36 p.m.

(Proceedings had in open court.)

MR. HEALEY: We're ready, Judge. Thank you.

THE COURT: Okay.

COURTROOM DEPUTY CLERK: Before the Court is District Court Case 1:26-cr-065, United States of America versus David Mitsnefes. We're here today for a plea and arraignment.

THE COURT: Okay. Kyle and Will, will you guys enter your appearances for the record, please?

MR. HEALEY: Good afternoon, Your Honor. Kyle Healey on behalf of the United States. At counsel table with me is FBI TIO Brandon McKinney.

Additionally, Your Honor, I'd just like to note present in the courtroom is the minor victim and her family.

MR. OSWALL: Will Oswall for Mr. Mitsnefes.

THE COURT: Okay. David, we're here today because the lawyers have tendered documents that indicate that you wish to proceed by information in this case, but there's a number of questions I have to ask you before we get to that stage. Okay?

THE DEFENDANT: Yeah.

THE COURT: Okay. To ensure truthful answers, Krista is going to administer an oath or affirmation, which

means that from that point forward, you'll be obligated to tell me the truth if I ask you any questions, but there aren't going to be any trick questions; we're just talking about your constitutional rights, we're talking about the difference between an information and an indictment, and we're talking about what's in the plea agreement.

Is that fair enough?

THE DEFENDANT: Yes, sir.

THE COURT: Okay.

COURTROOM DEPUTY CLERK: If you'll raise your right hand, do you solemnly swear under penalty of perjury that the testimony that you are about to give in this cause now in hearing is the truth and nothing but the truth?

THE DEFENDANT: Yes, I do.

THE COURT: Okay. So David, what's your full name?

THE DEFENDANT: David Mitsnefes.

THE COURT: Okay. No middle name?

THE DEFENDANT: Correct.

THE COURT: Okay. Good enough. Tell me a little bit about yourself, David. Where were -- where were you born, where'd you grow up, things like that?

THE DEFENDANT: I was born in Miami.

THE COURT: Miami, Florida?

THE DEFENDANT: Miami, Florida.

THE COURT: Okay.

THE DEFENDANT: I lived there till five, when we moved up to Cincinnati. I've been here since. I don't know, just a typical boy.

THE COURT: Okay. All right. I'm going to ask you some more questions about that, but based upon your answer to my first question, I take it you're a citizen of the United States and you're not subject to any type of deportation or immigration proceedings, correct?

THE DEFENDANT: Correct.

THE COURT: Okay. So tell me a little bit about your education and schooling. How far did you go -- where did you go to school and how far did you get, things like that?

THE DEFENDANT: I went to public school through high school and then I went to the University of Cincinnati, where I graduated with a psych major.

THE COURT: Okay, okay. All right. And how long ago was that?

THE DEFENDANT: It was -- forgive me. I think it was 2016.

THE COURT: Okay. From those answers, is it fair for me to assume that you have no difficulty reading and writing?

THE DEFENDANT: Correct.

THE COURT: Okay. You'd be surprised. Some people in here have a lot of trouble with that, but when I'm talking about that, you were able to read the information, you were able to read the plea agreement, and if you had questions about those documents, you discussed them with Will, and did he answer them to your satisfaction?

THE DEFENDANT: Correct, yes.

THE COURT: Okay. Have you ever been treated for any kind of mental illness or have any substance abuse problems either that, A, the current presence of a condition that makes it difficult for you to understand the conversation you and I are having or, B, the residual effect from any prior situation makes it hard for you to understand the conversations you and I are having?

THE DEFENDANT: No.

THE COURT: Okay. Sounds like a stupid question because you're in custody, but do you have any alcohol, drugs, or anything in your system today that affects your ability to understand what we're doing here?

THE DEFENDANT: No.

THE COURT: Okay. Will, without divulging any attorney-client privilege information, will you give me your take on David's competency to move forward today?

MR. OSWALL: Your Honor, I met with him about a half hour before his hearing. He answered all my questions

appropriately with appropriate answers, and so he's competent and understands what's happening.

THE COURT: Same with the lead-up to the documents that have been signed in this case?

MR. OSWALL: Yes, Your Honor.

THE COURT: All right. So I wanted to talk to you a little bit about your constitutional rights, David, and there's two ways charges are brought in our system. One is by information and one is by indictment.

We'll talk about the differences in those two scenarios in a moment, but under either scenario, you have certain constitutional rights.

The first one is you have the right to be represented by counsel. Obviously, you have already got counsel seated with you at table, but I want to just explain a little bit about what happens in most criminal proceedings. Okay?

THE DEFENDANT: Okay.

THE COURT: Okay. Usually, the first thing that happens is there's an exchange of information between the lawyers. We call that the discovery process, and what typically happens is, is that your lawyer would have a conversation with the United States Attorney.

Kyle would explain to Will what kind of information he thought he could produce at trial if we had

one, and then Will takes that information back to you; you guys have a conversation about the best path forward for you. Okay?

THE DEFENDANT: Yeah.

THE COURT: I don't want to know about the particulars of those conversations, but did you guys have such conversation or series of conversations?

THE DEFENDANT: Yes, we have.

THE COURT: Okay. All right. Let's talk -- we're not going to have a trial. If everything goes okay today, we're not going to have a trial because we're contemplating a plea to the information in this case, but if you had a trial, there are certain things that Will would do on your behalf. Okay?

If he thought there were pretrial motions that could be filed in order to exclude certain pieces of evidence or get the case dismissed, he would file those. We'd have hearings on those. That's important stuff.

If those were not successful, we'd then move into the trial phase, and the first thing that happens in the trial phase is the selection of a jury, and we bring in a number of people from our district, we seat them in here, and from that group of people, which we call an array, I ask questions, both lawyers ask questions, both sides exercise challenges, and after that, we try to seat a fair and

impartial jury, and that's one of the most important things that lawyers do. Okay?

THE DEFENDANT: (Nodding head up and down.)

THE COURT: The next step would then be opening statements. In criminal cases, sometimes defense lawyers make opening statements, sometimes they choose not to make an opening statement, and sometimes they wait to defer and decide if they're going to put a case on to make an opening statement at that point. That's important, but opening statements aren't evidence anyway.

What happens after that is the presentation of evidence. Following the presentation of evidence, then both sides have the right to make closing arguments, and your lawyer would certainly make a closing argument in your behalf trying to explain to the jury the shortcomings of the Government's case.

That's all important stuff, right?

THE DEFENDANT: Right.

THE COURT: Okay. During the case itself, the presentation of evidence, there's certain things, and probably the most important thing that criminal lawyers do is any witness that would be called by the Government to testify against you, your attorney would try to shake their credibility or show gaps in their memories, things like that, and they do that by a series of questions under oath

which we call cross-examination.

Are you generally familiar with that process, having seen things on television and movies and all that kind of stuff?

THE DEFENDANT: I have, yes.

THE COURT: So you kind of know a little bit about that, right?

THE DEFENDANT: Little bit, yeah.

THE COURT: Have you ever sat through a real trial?

THE DEFENDANT: No.

THE COURT: Anyway, you have a number of rights in that regard. First of all and foremost, in a trial situation, nobody can make you admit you committed a criminal offense.

We're not contemplating a trial here, we're contemplating a plea, which means probably in about 10 or 15 minutes, I'm going to be talking about a statement of facts that's attached to the plea agreement, and if you tell me that the statement of facts is accurate, that means you're willing to admit you committed an offense.

Are you okay with that?

THE DEFENDANT: Yes.

THE COURT: Okay. Now, second and a very valuable right is what we call the Fifth Amendment right not to

incriminate yourself.

A lot of people talk about the Fifth Amendment, but what does that really mean? That means that in a trial situation, Kyle cannot call you as a witness and put you on the witness stand and ask any questions.

You have an absolute right not to testify, and the jury's instructed that they're not to consider that or hold that against you in any way.

So that's a very valuable right. Okay?

THE DEFENDANT: Yes.

THE COURT: The only way that Kyle would ever be able to ask you any questions is if you guys went to trial and you decided to put on a defense and as part of the defense, you and Will decided it was smart for you to testify.

So once you took the witness stand, got sworn in, and answered his questions, you've obviously given up your right not to testify, and only in that situation and only that situation could Kyle ask you any questions under cross-examination.

Fair enough?

THE DEFENDANT: Yes.

THE COURT: Okay. The burden of proof in a criminal case is beyond a reasonable doubt, which means that the Government has an obligation to prove each and every

element of the case beyond a reasonable doubt, and we do that, and it has to be proven by unanimous verdict, which means all 12 jurors that are selected would have to agree that the Government has proven each and every element of the case beyond a reasonable doubt. Okay?

So that's a pretty high burden. Okay?

THE DEFENDANT: Yes.

THE COURT: As I said, they're given a number of instructions. If you don't testify during trial, they're told they can't use that against you in any way, shape, or form. Okay?

THE DEFENDANT: Okay.

THE COURT: Okay. Are you willing to give up those rights that we've just talked about and proceed with the information in this case?

THE DEFENDANT: Yes.

THE COURT: Okay. Because this is a felony and could lead to certain consequences down the road, definite consequences in some cases, first and foremost is you become what's known as a prohibited person, which means you're never allowed to own, use, or possess firearms, dangerous ordnances, destructive devices and things like that. Okay?

THE DEFENDANT: Yes.

THE COURT: Second thing is, as you move down the road, I don't know what could possibly come up down the

road, but there's all kinds of things, job applications, perhaps employment opportunities, things like that, but if you're ever confronted with a questionnaire in a formal setting that says have you ever been convicted of a crime punishable by a year or more in prison, that's a felony, you would have the obligation of answering that question affirmatively and saying yes, I have. Okay?

THE DEFENDANT: Yes.

THE COURT: Do you have any other state, federal, or local charges pending against you right now that a guilty plea in this case could adversely affect?

THE DEFENDANT: No.

THE COURT: All right. I mentioned before that these rights would apply whether you proceeded by information or indictment --

(Court Reporter interrupts proceedings.)

THE COURT: Sure. I'm sorry. I mentioned before, the case can proceed by information or by indictment. I just want to talk about the differences and make sure that you're willing to proceed by information.

Fair enough?

THE DEFENDANT: Yes.

THE COURT: Okay. So the information in this case states that on or about September 1st, 2021, within our district, the Southern District of Ohio, you did employ,

use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing visual depiction of such conduct; that is, a video of minor victim one, who at the time was 14 years old, and the visual depiction was produced using materials that were mailed, shipped, transported in, and affecting foreign -- interstate and foreign commerce.

That's the charge. Okay?

THE DEFENDANT: Yeah.

THE COURT: Have you and Will discussed the information in this case?

THE DEFENDANT: Yes.

THE COURT: Did he explain to you what those charges meant?

THE DEFENDANT: Yes.

THE COURT: Do you think you understand the meaning of those charges?

THE DEFENDANT: I think so, yes.

THE COURT: Did you guys discuss any possible defenses you might have to those charges?

THE DEFENDANT: Yes.

THE COURT: Thank you. Based upon that, did you decide that the smartest thing for you to do was to enter into plea negotiations in this case?

THE DEFENDANT: Yes.

THE COURT: Okay. Did Will also tell you what the maximum possible penalties were if you went to trial and got convicted?

THE DEFENDANT: Yes.

THE COURT: Okay. Let's talk about the maximum possible penalties under the one count of information that we're talking about here.

Okay. So Count 1 of the information is sexual exploitation of children. It's a violation of 18 USC 2251(a) and (e), and it carries a minimum of 15 years up to 30 years of imprisonment.

We'll talk about how sentencings are arrived at in just a moment, but it has -- it has what's called a mandatory minimum of 15 years and a maximum of 30 years.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. If a term of imprisonment, which -- is imposed, which again, the mandatory minimum contemplates there would be a term of imprisonment, it has to be followed by a term of supervised release, and we'll talk about supervised release in just a moment, but it has to be at least five years and could be for the rest of your life.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. There's also certain mandatory restitution under 18 USC 2259, and that has to be at least 3,000 -- $3,000 per victim. There's forfeiture, and that's outlined in the plea agreement itself.

There's also an item we call a special assessment, which means for any count of a felony conviction, there's a special assessment of $100 that would be applicable in this case, and there's also a $5,000 assessment pursuant to 18 USC 3014. Okay?

THE DEFENDANT: Yes.

THE COURT: All right. Pursuant to 18 USC 2259(a)(3), there may be an additional assessment of up to $50,000, depending on certain factors. Okay?

THE DEFENDANT: Yeah.

THE COURT: Which could include restitution to victims and things like that.

THE DEFENDANT: Got it, yes.

THE COURT: So you and Kyle -- excuse me -- you and Will discussed this, and you're aware of those potential sentences in this case, right?

THE DEFENDANT: Yes.

THE COURT: Okay. Let's talk about how an actual sentence is arrived at, but before I do that, I want to just talk about how we want to proceed in this case. You've said you want to go -- you want to proceed by information in this

case.

Unless you waive your right to indictment, you may not be charged with a felony unless a grand jury would find there's probable cause to believe a crime has been committed and that you, in fact, are the person that committed it.

A grand jury is composed of at least 16 people, not more than 23 people, 12 of whom present must find that there is probable cause to believe that a crime has been committed and that you committed the crime in order to return an indictment against you.

If you do not waive your right to indictment, the Government may then present this case to a grand jury and request that the grand jury indict you. The grand jury might indict you or they might not indict you.

If you waive your right to indictment by grand jury and choose to proceed by information, then the case will proceed just as though you had been indicted. Okay?

THE DEFENDANT: Yeah.

THE COURT: In other words, under the single count of information we've talked about. Okay?

THE DEFENDANT: Yes.

THE COURT: Have you and Will fully discussed your rights to have the case presented to a grand jury, and do you voluntarily choose to proceed by information in this case?

THE DEFENDANT: Yes.

THE COURT: Has anybody made any threats or promises or told you certain things either to force you or induce you to waive your right to having the case presented to a grand jury?

THE DEFENDANT: No.

THE COURT: This is your own free and voluntary act, correct?

THE DEFENDANT: Yes.

THE COURT: Okay. Will, do you have a waiver of indictment in front of you?

MR. OSWALL: We do.

THE COURT: Okay. Have you discussed that fully with your client?

MR. OSWALL: I have.

THE COURT: Okay. And has your client signed that and have you signed off on that?

MR. OSWALL: We have.

THE COURT: Okay. I'll note for the record that I watched David sign that before counsel -- before Kyle came in this morning -- actually, Kyle was here. He handed it to you. I watched him sign it.

So David, I'm going to ask you, is that your signature on the waiver of information?

THE DEFENDANT: Yes, it is.

THE COURT: Okay. Krista, can you hand that up? Do you mind?

COURTROOM DEPUTY CLERK: (Providing.)

THE COURT: Thank you. Okay. So this document says you understand you've been accused of one or more offenses punishable by imprisonment of more than one year.

We've discussed in open court your rights and the nature of the proposed charges against you, and after receiving this advice, you have decided to waive your right to have the case presented to a grand jury and you consent to prosecution by information.

Do you understand all that?

THE DEFENDANT: Yes.

THE COURT: Okay. And I saw you sign it, but just for the record, is that your signature above Will's signature on this document?

THE DEFENDANT: Yes.

THE COURT: Excuse me. I'm going to accept the waiver of indictment and I'm going to sign off on the waiver form.

It's my finding that David has knowingly, intentionally, and voluntarily waived his right to have the case presented to a grand jury for possible indictment and has chosen to proceed by information in this case.

So David, at this time, I'm going to ask you, how

do you plead to the offense charged in the one-count information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Okay. I had mentioned before what the possible penalties in the case were, and let's talk about how someone in my position arrives at those. Okay?

Back in 1984, Congress passed what was then known, and still is, as the Sentencing Reform Act. What they did was they tried to figure out a way to have sentences in all criminal cases across the federal jurisdictions appropriately match up with the crimes and have sort of a systematic approach across the nation in terms of sentencing.

So how are they going to do that? What they did was they put together what was called a Sentencing Commission. The Sentencing Commission authored a book called the guidelines manual. The guidelines manual figures out how judges in my situation should start and begin to calculate sentences in criminal cases. Okay?

So what they did was, for every single offense across the federal jurisdiction, they assigned a point system. So whether it's drugs, theft, cases like this, there was what's called a base offense level, which is expressed in a number of points.

Then there are things that can increase the number

of points in the guidelines calculation. For example, in a drug case, the amount of drugs can increase the number of points.

In cases involving robberies and things like that, whether guns were used, whether somebody was injured, things like that, can also raise the number of points. In cases like this, things like the victim's age and exactly what was done can also increase the number of points.

At the end of the day, the person in the Probation Department that authors the report comes out with a calculation, and they have what's called a base offense level, then with the points there, it becomes an adjusted offense level.

There are things that can also decrease the number of points; for example, timely acceptance of responsibility. Accepting responsibility can reduce it two or three points, depending on the particular situation.

There may be other factors that would also reduce the number of points, but at the end of the day, there is a thing that's called the total adjusted offense level, and that's a number of points.

On the other side, they run your criminal history, and do you have any kind of criminal history that I should know about at this point?

THE DEFENDANT: No.

THE COURT: Okay. So you'll likely be a criminal history I, which is minimum or no criminal history at all. In some cases, with people that are repeat offenders, it could be as high as VI.

In any event, in the back of the guidelines manual, there is a chart. One side of the chart, it's got the adjusted total offense level number of points. On the other side, it's got a criminal history category.

If you were to draw a ruler across the page, where those two columns meet, in the middle would be a number of months on the low end to a number of months on the high end, which is the calculated sentencing range in a case. Okay?

So up until about 15 years ago, if the Probation Department did their math calculation correctly, a person in my position was stuck with that range no matter what it was, but since then, the Supreme Court has said not so fast, that's the starting factor.

Judges can look at a number of other things; lawyers and judges usually call them 3553 factors, but it takes into account any other situation that might be brought to my attention by either the Government or by your lawyer in fashioning an appropriate sentence. Okay?

THE DEFENDANT: (Nodding head up and down.)

THE COURT: As long as I can explain in the record why I'm going either above that calculated range or below

that calculated range, it's -- it's -- that'll be the sentence in the case as long as I don't go below a mandatory minimum or go above the statutory maximum. Okay? So at the end of the day, whatever the range is, I'll have a fair amount of discretion in that regard.

Are you okay with that?

THE DEFENDANT: Yes.

THE COURT: Okay. I also talked about a term of supervised release, and I will tell you in cases like this, I generally impose a lengthy term of supervised release because of the nature of the offense. That can be mitigated down later on, but generally it starts pretty high. Okay?

THE DEFENDANT: (Nodding head up and down.)

THE COURT: Since you've told me you have no criminal record, I'm assuming you've never been on probation, parole, community control, or anything like that before, right?

THE DEFENDANT: Correct.

THE COURT: All right. So what will happen is, when you're released from the institution, you'll be assigned a probation officer. That person will be in charge of you, and there will be a number of rules and regulations you have to follow.

First and foremost is not to commit any other federal, state, or local crimes, and equally important is

don't get caught with a gun, firearm, ammunition, destructive devices, deadly ordnances, or things like that. Those are usually what trips up most people most of the time. Okay?

But they're also going to do a background check. There may be psychological assessments they want to do. There may -- I don't know if there's any substance abuse involved in your background or things like that, but whatever they decide is appropriate, they will recommend that to me, and likely those also get incorporated into the rules and regulations of supervised release. Okay?

It's not unusual for somebody on supervised release to have small glitches along the way, and oftentimes the Probation Department might talk to you. I mean, a common example would be a dirty urine or somebody smoking marijuana or something like that.

If the probation officer thinks that they've sorted it out with you, I might not even find out about it, you may just continue on supervised release. If the Probation Department wants me to be aware of it but not do anything, they file what's called a no-action report, which might say David missed three meetings, he's got a legitimate, somewhat legitimate reason, we're working with him; don't do anything at this point in time, just stick that in the file in case something happens down the road.

If you catch a new case, if you're pulled over and you've got a gun in your car or something like that, if you're ingesting, you know, serious drugs, things like that, then they're probably going to file a supervised release violation report. You're back here in front of me, we have a hearing, and two things happen.

First, I've got to figure out if you did, in fact, violate the terms of supervised release, and second, if the answer is yes, what do I do? In a number of situations, I've got a full panoply of things I can do.

I can extend the term of supervised release, I can order more treatment if I think it's necessary, but if you catch a new crime or you have a gun, you're probably going to go back to jail. Okay? And that would be for possibly the full term of supervised release, and again, there's a guidelines calculation that comes along with that. Okay?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. I've been talking a lot. Are you riding with me so far?

THE DEFENDANT: Yeah.

THE COURT: Okay? Okay. Kyle, do you want to explain and go through the plea agreement and any essential terms we need to talk about?

MR. HEALEY: Yes, Your Honor. Thank you. We have reached a plea agreement in this case, Your Honor. We filed

it on the Court's docket. It's eight pages.

The first paragraph indicates that this is an agreement between the United States and Mr. Mitsnefes pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, and then it goes through the offense of conviction; that is, that he's agreeing to plead guilty to Count 1 of the information, which charges him with sexual exploitation of children, that he'll not withdraw or attempt to withdraw his plea, that he will, in fact, admit he's guilty of this offense.

Paragraph two goes to the elements of the offense. That is what is United States must prove beyond a reasonable doubt to convict someone of this crime. Those elements here are the Defendant employed, used, persuaded, induced, or coerced a minor to engage in or to assist another person to engage in --

(Court reporter interrupts proceedings.)

MR. HEALEY: Sorry -- to engage in or to assist another to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct, and second, that the visual depiction was produced or transmitted using materials that were mailed, shipped, or trans -- transported in or affecting interstate or foreign commerce by any means, including computer, or the visual depiction was transported in or affecting interstate or

foreign commerce.

Paragraph three details the penalties which the Court previously discussed. Those are a minimum sentence of 15 years up to 30 years' imprisonment; a minimum of five years up to lifetime supervision; up to a $250,000 fine; mandatory restitution, which shall not be less than 3,000 per victim; forfeiture; a mandatory $100 special assessment; and a $5,000 assessment pursuant to 18 USC 3014 as well as a $50,000 assessment pursuant to 2259A(a)(3).

Paragraph four details the waiver of rights. These are the rights that the Defendant understands he's giving up by pleading guilty to the information.

First is the right to be indicted by the grand jury, the right to plead not guilty, to have a trial by jury, to be assisted by his counsel during the trial, to confront and cross-examine the Government's witnesses, to testify if he desires, to present evidence and compel the attendance of his own witnesses, or to not be compelled to testify or present any evidence, to not have that decision held against him by the jury.

Finally, he would be presumed innocent throughout that trial until a jury would find proof of his guilt beyond a reasonable doubt.

THE COURT: I have to interrupt for a second. I kind of skipped over this. When we're talking about the

compulsory process of witnesses that Kyle's talking about, that means if we had a trial and you and Will thought there were either documents or witnesses that you thought were necessary in your defense and they were properly subpoenaed, we would make sure those witnesses or documents appeared in court, and if they didn't, we'd have the marshals go get them. Okay?

THE DEFENDANT: Yes.

THE COURT: Sorry, Kyle.

MR. HEALEY: And Defendant understands that he's giving up each and every one of those rights with this guilty plea.

Paragraph five details the use of statements. In short, Your Honor, the Defendant's giving up certain protections he has under the Federal Rules of Criminal Procedure and the Rules of Evidence regarding his statements made in court here today. Should the need arise in a future proceedings, the United States could use those statements against him.

Paragraph six is the immigration consequences. That's just that the Defendant understands that if he's not a citizen or national of the United States, this offense could be used as a basis to deport or remove him from the United States.

Paragraph seven is the applicability of the

advisory sentencing guidelines. It indicates that the Defendant understands that the Court has an obligation to both calculate and consider the sentencing guidelines, the applied range, and the other sentencing factors, statutory factors, prior to imposing sentence in this case.

Paragraph eight is the factual and sentencing stipulation, and that indicates that the Defendant's offering to plead guilty based on the statement of facts contained in Attachment A and that that is the basis for his plea; additionally indicates that the United States will not oppose a two-level reduction under the guidelines for acceptance of responsibility as well as the additional third level under that same chapter for his timely notification of his intent to plead guilty. All this, though, is contingent on him continuing to demonstrate compliance with that section of the guidelines.

Paragraph nine is the obligations of the Defendant. The first is forfeiture. The Defendant is agreeing to forfeit not only the videos and materials in this matter but, additionally, a list of items contained, numerous cell phones, laptops, and other electronics in this case listed in both his information and the plea agreement; that is, he's giving up any interest he may have in those items.

The next part is monetary penalties. It just

indicates that the Defendant understands that if he's ordered to pay restitution to the victims of his offense, he will pay -- he will need to be -- he will need to pay that immediately or as determined by the Court and that he will provide any information requested by the United States in helping us collect that restitution from him.

Paragraph 10 is the obligations of the United States; that is, that we will not further prosecute the Defendant for conduct prior to the date of this plea agreement that was part of the same course of criminal conduct described in the information that was known by our office at the time we executed this plea; however, this agreement does not bind any other local, state, or federal prosecutions.

Your Honor, paragraph 11 is the waiver of, appeal, and I'll read this in its entirety. It indicates that, "in exchange for the concessions made by the United States Attorney's Office in this plea agreement, the Defendant waives the right to appeal the conviction and sentence imposed, except if the sentence imposed exceeds the statutory maximum.

Defendant also waives the right to attack his conviction or sentence collaterally, such as by way of motion brought under 28 USC 2255, or to seek a reduction of sentence under 18 USC 3582(c)(1)(B) or (c)(2); however, this

waiver shall not be construed to bar a claim by the Defendant of ineffective assistance of counsel or prosecutorial misconduct."

In summary, Your Honor, paragraph 11 indicates that the Defendant, when he gets sentenced in this case, other than under the most narrow grounds listed, his case is effectively over; he's not allowed to seek further challenges to the Court of Appeals or come back to this Court.

Paragraph 12, Your Honor, is the Hyde Amendment. That is just the Defendant agreeing he's not a prevailing party as those terms are used in that amendment. Generally what that does is it bars him from suing for attorneys' fees.

Paragraph 13, Your Honor, is the special conditions related to child exploitation offenses. The first is that Defendant understands as a result of his conviction, he's going to have to register under the Sex Offender Registration and Notification Act.

Typically, that requires him to notify the local sheriff of where he's residing, where he's employed, or where he's a student; that he must update that registration within three days after the change of any of that information or other relevant information; that failure to comply with that statute and that registration requirement

could lead to prosecution not only under state offenses but, as well, under the federal offense of 18 USC 2250.

THE COURT: David, that can also be a violation of terms of supervised release if you fail to comply with that. Okay?

THE DEFENDANT: Yes.

THE COURT: Go ahead, Kyle. Sorry.

MR. HEALEY: Yes, Your Honor. The second part is that he understands he's going to have special conditions as part of his term of supervised release that could include monitoring computers he's using -- using, limitations on the software of computers he's prohibited -- or able to use, prohibitions on possessing obscenity in any form, required treatment and recommended programs, required disclosure of any contact with minor children, and any other condition the Court may find reasonably related to his offense.

Paragraph 14 is the Freedom of Information Act. That is just Defendant's giving up his right under that act to request information about the investigate -- investigation and prosecution of this offense.

Paragraph 15 is the acceptance of the plea agreement. Defendant understands that the Court is not bound by either his attorney or my -- the Government's sentencing recommendations or stipulations in this case and that it is within the sole discretion of the Court to

determine the sentence in this case.

Paragraph 16 is the violation of this plea agreement. If the Defendant were to violate this plea agreement, typically by failing to accept responsibility at sentencing, the Defendant needs to understand that the United States will be relieved of our obligations under the plea agreement and could make sentencing recommendations that were not permitted by the agreement or bring additional charges that were perhaps barred by the plea agreement; however, the Defendant will not be relieved of his obligations under the plea agreement.

He also would be waiving any rights he has under the Statute of Limitations or Speedy Trial Act should he get out of this plea agreement at some future date.

Paragraph 17 is just Defendant's acknowledgment. It indicates that he's read and understands this plea agreement; that he's accepting it knowingly and voluntarily; that his decision to do so is not the result of any force, threats, or promises other than those in this agreement; that he's conferred with his attorney regarding this agreement and the facts and circumstances of his case, including the law and any defenses he may have; that he's satisfied with the representation and advice he's received from his counsel.

Lastly, Your Honor, paragraph 18 indicates that

this is the entire agreement; that this agreement, along with the attachment, is the complete agreement between the parties and that it supercedes any other promises, representations, or understandings or agreements the parties may have had.

Your Honor, I signed this electronically, and it appears that Mr. Mitsnefes and his counsel signed it back in June.

THE COURT: Okay. Will, could you show David page 7 of the plea agreement? I'm going to ask him if that's his signature.

MR. OSWALL: (Providing.)

THE DEFENDANT: It is.

THE COURT: And did you sign it because you think this plea agreement contains the entire understanding you and your lawyer negotiated with the United States?

THE DEFENDANT: Yes.

THE COURT: Did anybody put any undue force, pressure, or coercion against you such that this -- such that this is not your own free and voluntary act?

THE DEFENDANT: No.

THE COURT: Did anybody make you any promises or tell you I'd treat the case in a certain way in order to either induce you to either waive your right to have the case proceed by indictment or to plead not guilty in this

case?

THE DEFENDANT: No.

THE COURT: Okay. You understand at any time if you wanted to before we finish today, if you were to say I'm not guilty, you would have a right to a trial; is that correct?

THE DEFENDANT: Yes.

THE COURT: Okay. Are you satisfied with the work that Will has done for you on your behalf in this case?

THE DEFENDANT: Yes.

THE COURT: Okay. About 10 or 15 minutes ago, we talked about the statement of facts, and Will, if you could show that to David, it's Attachment A to the plea agreement, which is incorporated herein for all -- for all purposes.

MR. OSWALL: (Providing.)

THE COURT: Could you take a look at that, David? Have you read that?

THE DEFENDANT: Yes.

THE COURT: Okay. Again, toward the bottom on the right side, it looks like your signature.

Did you sign off on the statement of facts?

THE DEFENDANT: Yes, I did.

THE COURT: Did you sign off on the statement of facts because it's accurate and correct?

THE DEFENDANT: Yes.

THE COURT: Is it wrong or incorrect in any way I should know about before we go any further?

THE DEFENDANT: No.

THE COURT: And I take it, then, you're offering to plead guilty to the single count of information because you did, in fact, commit that offense?

THE DEFENDANT: Yes.

THE COURT: Okay. So in light of the conversations we've had about your rights, about the sentencing guidelines, and whatever is contained in the plea agreement, I'll ask you for the last time, how do you wish to plead to the charge in the one-count information, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Based upon my observations of David in court today, his appearance, and the manner in which he's been responding to the questions I've been asking, I'm satisfied that he is in full possession of his faculties, he's not suffering from any apparent physical or mental illness, he's not under the influence of any narcotics, medications, or alcohol which would affect his ability to understand these proceedings, and in fact, he does understand the proceedings in which we're all engaged and he's aware of the nature and the meaning of the charge and consequent -- potential consequences of his plea of guilty,

and I have explained to him in discussing the sentencing guidelines, and he's aware of negotiations undertaken on his behalf which have culminated in the plea agreement.

Therefore, I find that David is fully competent and capable of entering an informed plea, which this is. I further find that David has waived his right to have the case presented to a grand jury; he's done that knowingly and intelligently and voluntarily; and I further find that his plea of guilty is knowing and voluntary and fully supported by an independent basis of fact that's contained as Attachment A and is incorporated herein for all purposes, which sets forth the essential elements of the charge and the jurisdiction of this Court in the Southern District of Ohio.

So at this time, I'm going to accept the plea and make a finding of guilty. Okay?

THE DEFENDANT: (Nodding head up and down.)

THE COURT: All right. So the next step along the line is the presentence investigation, which means that somebody from the Probation Department's going to interview you.

Will or somebody from his office should be with you when that occurs. Okay?

THE DEFENDANT: Yes.

THE COURT: They're not only going to talk to you

guys, they're also going to talk to Kyle and his people, and they're going to author a draft report of a presentence investigation which I will not see.

You guys, both lawyers on -- lawyers on each side both get that. It's not unusual for people to have some suggestions, changes, disagreements with the probation officer, which they're free to discuss. Sometimes the probation officer will make some changes. Most of the time, they do not.

If those complained about items occur and reappear in the final presentence investigation which I see, both sides have the right to file written objections, formal objections, which I usually deal with at the sentencing. Okay?

THE DEFENDANT: Yes.

THE COURT: Okay. Anything else at this time, Kyle?

MR. HEALEY: No, Your Honor. Thank you.

THE COURT: Okay. Anything else, Will?

MR. OSWALL: No, Your Honor.

THE COURT: Okay. So David, because of the nature of this offense and the possible sentences, you're going to remain in the custody of the marshals until the presentence investigation is completed, and those normally take six to eight weeks usually at least. Okay?

THE DEFENDANT: Okay.

THE COURT: Anything else, guys?

MR. HEALEY: No, Your Honor. Thank you.

MR. OSWALL: No, Your Honor.

THE COURT: All right. We'll stand in recess. Thank you.

(Hearing concluded at 1:17 p.m.)

CERTIFICATE OF REPORTER

I, Caryl L. Blevins, Federal Official Realtime Court Reporter, in and for the United States District Court for the Southern District of Ohio, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

s/Caryl L. Blevins_______
**CARYL L. BLEVINS, RPR, CRR**
FEDERAL OFFICIAL REALTIME COURT REPORTER

## $

**$100** [2] - 16:7, 27:7
**$250,000** [1] - 27:5
**$3,000** [1] - 16:3
**$5,000** [2] - 16:8, 27:8
**$50,000** [2] - 16:13, 27:9

## 1

**1** [2] - 15:8, 26:7
**10** [3] - 10:17, 30:7, 35:11
**100** [1] - 2:5
**11** [2] - 30:15, 31:4
**11(c)(1)(A** [1] - 26:4
**119** [1] - 1:21
**12** [3] - 12:3, 17:7, 31:10
**13** [1] - 31:15
**14** [2] - 14:4, 32:17
**15** [7] - 10:17, 15:10, 15:14, 22:13, 27:4, 32:21, 35:11
**16** [2] - 17:6, 33:2
**17** [1] - 33:15
**18** [8] - 15:9, 16:2, 16:9, 16:11, 27:8, 30:25, 32:2, 33:25
**1984** [1] - 20:7
**1:17** [1] - 39:7
**1:26-cr-065** [1] - 3:7
**1:26-cr-65** [1] - 1:5
**1st** [1] - 13:24

## 2

**2016** [1] - 5:21
**2021** [1] - 13:24
**2026** [2] - 1:11, 3:1
**221** [1] - 1:16
**2250** [1] - 32:2
**2251(a** [1] - 15:10
**2255** [1] - 30:24
**2259** [1] - 16:2
**2259(a)(3** [1] - 16:12
**2259A(a)(3)** [1] - 27:9
**23** [1] - 17:7
**28** [2] - 30:24, 40:6
**2:36** [1] - 3:2

## 3

**3,000** [2] - 16:3, 27:6
**30** [3] - 15:11, 15:14, 27:4
**3014** [2] - 16:9, 27:8
**311** [1] - 1:21
**3553** [1] - 22:19
**3582(c)(1)(B** [1] - 30:25

## 4

**400** [1] - 1:17
**45202** [2] - 1:22, 2:5
**45402** [1] - 1:17

## 5

**512-1511** [1] - 2:6
**513** [2] - 1:18, 1:22
**544-2261** [1] - 1:22

## 6

**684-3711** [1] - 1:18

## 7

**7** [1] - 34:10
**753** [1] - 40:6

## 9

**9** [2] - 1:11, 3:1
**937** [1] - 2:6

## A

**ability** [2] - 6:19, 36:21
**able** [4] - 6:3, 6:4, 11:12, 32:12
**above-entitled** [1] - 40:9
**absolute** [1] - 11:6
**abuse** [2] - 6:9, 24:7
**accept** [3] - 19:18, 33:4, 37:15
**acceptance** [3] - 21:15, 29:12, 32:21
**accepting** [2] - 21:16, 33:17
**account** [1] - 22:20
**accurate** [2] - 10:20, 35:24
**accused** [1] - 19:5
**acknowledgment** [1] - 33:15
**act** [3] - 18:8, 32:18, 34:20
**Act** [4] - 20:8, 31:19, 32:17, 33:13
**action** [1] - 24:21
**actual** [1] - 16:22
**additional** [3] - 16:12, 29:12, 33:8
**additionally** [3] - 3:15, 29:10, 29:20
**adjusted** [3] - 21:12, 21:20, 22:7
**administer** [1] - 3:25
**admit** [3] - 10:14, 10:21, 26:9
**adversely** [1] - 13:11
**advice** [2] - 19:9, 33:23
**advisory** [1] - 29:1
**affect** [2] - 13:11, 36:21
**affecting** [3] - 14:6, 26:23, 26:25
**affects** [1] - 6:18
**affirmation** [1] - 3:25
**affirmatively** [1] - 13:7
**afternoon** [1] - 3:12
**age** [1] - 21:7
**ago** [3] - 5:19, 22:13, 35:11
**agree** [1] - 12:3
**agreeing** [3] - 26:6, 29:19, 31:11
**agreement** [30] - 4:6, 6:4, 10:19, 16:4, 25:22, 25:25, 26:3, 29:22, 30:10, 30:13, 30:18, 32:22, 33:3, 33:4, 33:7, 33:8, 33:9, 33:11, 33:14, 33:17, 33:19, 33:21, 34:1, 34:2, 34:10, 34:15, 35:13, 36:11, 37:3
**agreements** [1] - 34:4
**ahead** [1] - 32:7
**alcohol** [2] - 6:17, 36:21
**allowed** [2] - 12:21, 31:7
**amendment** [1] - 31:12
**Amendment** [3] - 10:25, 11:2, 31:10
**AMERICA** [1] - 1:3
**America** [1] - 3:7
**ammunition** [1] - 24:1
**amount** [2] - 21:2, 23:5
**answer** [3] - 5:7, 6:6, 25:9
**answered** [2] - 6:25, 11:17
**answering** [1] - 13:6
**answers** [3] - 3:24, 5:22, 7:1
**anyway** [2] - 9:10, 10:12
**apparent** [1] - 36:19
**appeal** [2] - 30:15, 30:19
**Appeals** [1] - 31:8
**appearance** [1] - 36:16
**appearances** [1] - 3:11
**APPEARANCES** [1] - 1:12
**appeared** [1] - 28:5
**applicability** [1] - 28:25
**applicable** [1] - 16:7
**applications** [1] - 13:1
**applied** [1] - 29:4
**apply** [1] - 13:14
**approach** [1] - 20:12
**appropriate** [3] - 7:1, 22:22, 24:9
**appropriately** [2] - 7:1, 20:11
**argument** [1] - 9:14
**arguments** [1] - 9:13
**arise** [1] - 28:17
**arraignment** [1] - 3:9
**array** [1] - 8:23
**arrived** [2] - 15:12, 16:23
**arrives** [1] - 20:6
**assessment** [7] - 16:5, 16:7, 16:8, 16:12, 27:7, 27:8, 27:9
**assessments** [1] - 24:6
**assigned** [2] - 20:21, 23:21
**assist** [2] - 26:15, 26:18
**assistance** [1] - 31:2
**Assistant** [1] - 1:15
**assisted** [1] - 27:15
**assume** [1] - 5:23
**assuming** [1] - 23:15
**attached** [1] - 10:19
**Attachment** [3] - 29:9, 35:13, 37:11
**attachment** [1] - 34:2
**attack** [1] - 30:22
**attempt** [1] - 26:8
**attendance** [1] - 27:18
**attention** [1] - 22:21
**attorney** [4] - 6:22, 9:23, 32:23, 33:20
**ATTORNEY** [1] - 1:14
**Attorney** [2] - 1:15, 7:23
**Attorney's** [2] - 1:16, 30:18
**attorney-client** [1] - 6:22
**attorneys'** [1] - 31:13
**author** [1] - 38:2
**authored** [1] - 20:16
**authors** [1] - 21:10
**aware** [4] - 16:19, 24:20, 36:24, 37:2

## B

**background** [2] - 24:5, 24:8
**bar** [1] - 31:1
**barred** [1] - 33:9
**BARRETT** [1] - 1:10
**bars** [1] - 31:13
**base** [2] - 20:23, 21:11
**based** [4] - 5:6, 14:22, 29:8, 36:15
**basis** [3] - 28:23, 29:9, 37:10
**become** [1] - 12:19
**becomes** [1] - 21:12
**begin** [1] - 20:18
**behalf** [5] - 3:13, 8:14, 9:15, 35:9, 37:3
**below** [2] - 22:25, 23:2
**best** [1] - 8:2
**between** [4] - 4:5, 7:20, 26:3, 34:2
**beyond** [5] - 11:24, 12:1, 12:5, 26:12, 27:22
**bind** [1] - 30:13
**bit** [6] - 4:21, 5:11, 7:7, 7:16, 10:6, 10:8
**BLEVINS** [1] - 40:15
**Blevins** [3] - 2:4, 40:3, 40:14
**book** [1] - 20:16
**born** [2] - 4:22, 4:23
**bottom** [1] - 35:19
**bound** [1] - 32:23
**boy** [1] - 5:4
**Brandon** [2] - 2:3, 3:14
**bring** [2] - 8:21, 33:8
**brought** [3] - 7:8, 22:20, 30:24
**burden** [2] - 11:23, 12:6

## C

**c)(2** [1] - 30:25
**calculate** [2] - 20:19, 29:3
**calculated** [3] - 22:12, 22:25, 23:1
**calculation** [4] - 21:1, 21:11, 22:14, 25:16

**cannot** [1] - 11:4
**capable** [1] - 37:5
**car** [1] - 25:2
**carries** [1] - 15:10
**CARYL** [1] - 40:15
**Caryl** [2] - 2:4, 40:3
**caryl_blevins@ohsd.uscourts.gov** [1] - 2:6
**case** [47] - 3:20, 7:4, 8:12, 8:17, 9:8, 9:16, 9:19, 11:24, 12:1, 12:5, 12:15, 13:11, 13:18, 13:23, 14:11, 14:24, 16:8, 16:20, 16:24, 17:1, 17:12, 17:16, 17:23, 17:25, 18:4, 19:10, 19:23, 19:24, 20:5, 21:2, 22:12, 23:2, 24:25, 25:1, 25:25, 29:5, 29:22, 31:5, 31:6, 32:24, 33:1, 33:21, 34:23, 34:25, 35:1, 35:9, 37:7
**CASE** [1] - 1:5
**Case** [1] - 3:7
**cases** [9] - 9:5, 12:19, 20:10, 20:19, 20:22, 21:4, 21:6, 22:3, 23:9
**catch** [2] - 25:1, 25:13
**category** [1] - 22:8
**caught** [1] - 24:1
**cell** [1] - 29:21
**certain** [10] - 7:12, 8:13, 8:16, 9:20, 12:18, 16:1, 16:13, 18:3, 28:14, 34:23
**certainly** [1] - 9:14
**CERTIFICATE** [1] - 40:1
**certify** [1] - 40:5
**challenges** [2] - 8:25, 31:8
**change** [1] - 31:23
**changes** [2] - 38:6, 38:8
**chapter** [1] - 29:13
**charge** [5] - 14:8, 23:21, 36:12, 36:24, 37:12
**charged** [2] - 17:3, 20:1
**charges** [8] - 7:8, 13:10, 14:14, 14:17, 14:20, 19:8, 26:7, 33:9
**chart** [2] - 22:6
**check** [1] - 24:5
**child** [1] - 31:16
**children** [3] - 15:9, 26:8, 32:15
**choose** [3] - 9:6, 17:16, 17:24
**chosen** [1] - 19:24
**Cincinnati** [5] - 1:17, 1:22, 2:5, 5:3, 5:16
**circumstances** [1] - 33:21
**citizen** [2] - 5:7, 28:22
**claim** [1] - 31:1
**Clerk** [2] - 2:2, 2:2
**CLERK** [3] - 3:6, 4:10, 19:3
**client** [3] - 6:22, 18:14, 18:16
**closing** [2] - 9:13, 9:14
**Code** [1] - 40:6
**coerce** [1] - 14:1
**coerced** [1] - 26:15
**coercion** [1] - 34:19
**collaterally** [1] - 30:23
**collect** [1] - 30:6
**columns** [1] - 22:10
**commerce** [3] - 14:7, 26:24, 27:1
**Commission** [2] - 20:16
**commit** [2] - 23:24, 36:6
**committed** [6] - 10:14, 10:21, 17:4, 17:5, 17:9
**common** [1] - 24:15
**community** [1] - 23:16
**compel** [1] - 27:17
**compelled** [1] - 27:18
**competency** [1] - 6:23
**competent** [2] - 7:2, 37:4
**complained** [1] - 38:10
**complete** [1] - 34:2
**completed** [1] - 38:24
**compliance** [1] - 29:15
**comply** [2] - 31:25, 32:4
**composed** [1] - 17:6
**compulsory** [1] - 28:1
**computer** [2] - 2:9, 26:24
**computers** [2] - 32:11, 32:12
**concessions** [1] - 30:17
**concluded** [1] - 39:7
**condition** [2] - 6:10, 32:15
**conditions** [2] - 31:16, 32:9
**conduct** [6] - 14:2, 14:3, 26:19, 26:20, 30:9, 30:11
**Conference** [1] - 40:11
**conferred** [1] - 33:20
**conformance** [1] - 40:10
**confront** [1] - 27:16
**confronted** [1] - 13:3
**Congress** [1] - 20:7
**consent** [1] - 19:10
**consequences** [4] - 12:18, 12:19, 28:20, 36:25
**consequent** [1] - 36:25
**consider** [2] - 11:7, 29:3
**constitutional** [3] - 4:4, 7:7, 7:12
**construed** [1] - 31:1
**contact** [1] - 32:15
**contained** [4] - 29:9, 29:20, 36:10, 37:10
**contains** [1] - 34:15
**contemplates** [1] - 15:19
**contemplating** [3] - 8:11, 10:16, 10:17
**contingent** [1] - 29:14
**continue** [1] - 24:19
**continuing** [1] - 29:15
**control** [1] - 23:16
**conversation** [4] - 6:12, 7:23, 8:2, 8:7
**conversations** [4] - 6:14, 8:6, 8:7, 36:9
**convict** [1] - 26:13
**convicted** [2] - 13:4, 15:3
**conviction** [5] - 16:6, 26:6, 30:19, 30:23, 31:18
**correct** [10] - 4:19, 5:9, 5:10, 5:25, 6:7, 18:8, 23:18, 35:6, 35:24, 40:7
**correctly** [1] - 22:14
**counsel** [8] - 3:13, 7:14, 7:15, 18:20, 27:15, 31:2, 33:24, 34:7
**count** [6] - 15:6, 16:6, 17:19, 20:1, 36:5, 36:12
**Count** [2] - 15:8, 26:7
**course** [1] - 30:10
**COURT** [99] - 1:1, 3:5, 3:10, 3:18, 3:24, 4:9, 4:15, 4:18, 4:20, 4:24, 5:1, 5:5, 5:11, 5:18, 5:22, 6:1, 6:8, 6:16, 6:21, 7:3, 7:6, 7:19, 8:5, 8:9, 9:4, 9:19, 10:6, 10:9, 10:12, 10:24, 11:11, 11:23, 12:8, 12:13, 12:17, 12:24, 13:9, 13:13, 13:17, 13:23, 14:10, 14:13, 14:16, 14:19, 14:22, 15:1, 15:5, 15:17, 16:1, 16:11, 16:15, 16:18, 16:22, 17:19, 17:22, 18:2, 18:7, 18:10, 18:13, 18:16, 18:19, 19:1, 19:4, 19:14, 19:18, 20:4, 22:1, 22:24, 23:8, 23:14, 23:19, 25:18, 25:21, 27:24, 28:9, 32:3, 32:7, 34:9, 34:14, 34:18, 34:22, 35:3, 35:8, 35:11, 35:16, 35:19, 35:23, 36:1, 36:4, 36:8, 36:15, 37:18, 37:25, 38:16, 38:19, 38:21, 39:2, 39:5, 40:15
**Court** [18] - 1:21, 2:4, 3:6, 3:7, 13:16, 22:16, 26:17, 27:3, 29:2, 30:4, 31:8, 31:9, 32:16, 32:22, 32:25, 37:13, 40:3, 40:4
**court** [5] - 3:3, 19:7, 28:6, 28:17, 36:16
**Court's** [1] - 26:1
**Courthouse** [1] - 2:4
**courtroom** [1] - 3:16
**Courtroom** [1] - 2:2
**COURTROOM** [3] - 3:6, 4:10, 19:3
**credibility** [1] - 9:24
**crime** [6] - 13:4, 17:4, 17:8, 17:9, 25:13, 26:13
**crimes** [2] - 20:11, 23:25
**criminal** [14] - 7:16, 9:5, 9:21, 10:15, 11:24, 20:10, 20:19, 21:22, 21:23, 22:1, 22:2, 22:8, 23:15, 30:10
**Criminal** [2] - 26:5, 28:15
**cross** [3] - 10:1, 11:20, 27:16
**cross-examination** [2] - 10:1, 11:20
**cross-examine** [1] - 27:16
**CRR** [2] - 2:4, 40:15
**culminated** [1] - 37:3
**current** [1] - 6:10
**custody** [2] - 6:17, 38:23

## D

**dangerous** [1] - 12:21
**date** [2] - 30:9, 33:14
**DATE** [1] - 1:11
**David** [19] - 3:8, 3:18, 4:15, 4:17, 4:21, 7:7, 18:20, 18:23, 19:21, 19:25, 24:22, 32:3, 34:9, 35:13, 35:16, 36:15, 37:4, 37:6, 38:21
**DAVID** [1] - 1:6
**David's** [1] - 6:23
**days** [1] - 31:23
**deadly** [1] - 24:2
**deal** [1] - 38:13
**decide** [3] - 9:8, 14:23, 24:9
**decided** [3] - 11:13, 11:14, 19:9
**decision** [2] - 27:19, 33:18
**decrease** [1] - 21:14
**Defendant** [21] - 1:7, 1:19, 26:14, 27:11, 28:10, 28:21, 29:2, 29:18, 30:1, 30:9, 30:18, 30:22, 31:2, 31:5, 31:11, 31:17, 32:22, 33:3, 33:5, 33:10
**DEFENDANT** [80] - 3:23, 4:8, 4:14, 4:17, 4:19, 4:23, 4:25, 5:2, 5:10, 5:15, 5:20, 5:25, 6:7, 6:15, 6:20, 7:18, 8:4, 8:8, 9:3, 9:18, 10:5, 10:8, 10:11, 10:23, 11:10, 11:22, 12:7, 12:12, 12:16, 12:23, 13:8, 13:12, 13:22, 14:9, 14:12, 14:15, 14:18, 14:21, 14:25, 15:4,

15:16, 15:25, 16:10, 16:14, 16:17, 16:21, 17:18, 17:21, 18:1, 18:6, 18:9, 18:25, 19:13, 19:17, 20:3, 21:25, 22:23, 23:7, 23:13, 23:18, 25:17, 25:20, 28:8, 32:6, 34:13, 34:17, 34:21, 35:2, 35:7, 35:10, 35:18, 35:22, 35:25, 36:3, 36:7, 36:14, 37:17, 37:24, 38:15, 39:1
**Defendant's** [4] - 28:14, 29:7, 32:18, 33:15
**defense** [4] - 9:5, 11:13, 11:14, 28:4
**defenses** [2] - 14:20, 33:22
**defer** [1] - 9:7
**definite** [1] - 12:18
**demonstrate** [1] - 29:15
**Department** [4] - 21:10, 22:14, 24:14, 24:20
**Department's** [1] - 37:20
**depiction** [5] - 14:3, 14:5, 26:20, 26:21, 26:25
**deport** [1] - 28:23
**deportation** [1] - 5:9
**Deputy** [1] - 2:2
**DEPUTY** [3] - 3:6, 4:10, 19:3
**described** [1] - 30:11
**desires** [1] - 27:17
**destructive** [2] - 12:22, 24:2
**details** [3] - 27:2, 27:10, 28:13
**Detective** [1] - 2:3
**determine** [1] - 33:1
**determined** [1] - 30:4
**devices** [2] - 12:22, 24:2
**difference** [1] - 4:5
**differences** [2] - 7:10, 13:19
**difficult** [1] - 6:11
**difficulty** [1] - 5:23
**dirty** [1] - 24:15
**disagreements** [1] - 38:6
**disclosure** [1] - 32:14
**discovery** [1] - 7:21
**discretion** [2] - 23:5, 32:25
**discuss** [2] - 14:19, 38:7
**discussed** [7] - 6:5, 14:10, 16:19, 17:22, 18:13, 19:7, 27:3
**discussing** [1] - 37:1
**dismissed** [1] - 8:17
**district** [2] - 8:22, 13:25
**District** [5] - 3:7, 13:25, 37:13, 40:4, 40:5
**DISTRICT** [2] - 1:1, 1:1
**DIVISION** [1] - 1:2
**divulging** [1] - 6:21
**docket** [1] - 26:1
**document** [2] - 19:4, 19:16
**documents** [5] - 3:19, 6:5, 7:3, 28:3, 28:5
**DOMINICK** [1] - 1:14
**done** [3] - 21:8, 35:9, 37:7
**doubt** [5] - 11:24, 12:1, 12:5, 26:13, 27:23
**down** [9] - 9:3, 12:18, 12:24, 12:25, 22:23, 23:12, 23:13, 24:25, 37:17
**draft** [1] - 38:2
**draw** [1] - 22:9
**drug** [1] - 21:2
**drugs** [4] - 6:18, 20:22, 21:2, 25:3
**during** [3] - 9:19, 12:9, 27:15

## E

**education** [1] - 5:12
**effect** [1] - 6:12
**effectively** [1] - 31:7
**eight** [3] - 26:1, 29:6, 38:25
**either** [9] - 6:10, 7:11, 18:3, 22:21, 22:25, 28:3, 32:23, 34:24
**electronically** [1] - 34:6
**electronics** [1] - 29:21
**element** [2] - 12:1, 12:4
**elements** [3] - 26:11, 26:13, 37:12
**employ** [1] - 13:25
**employed** [2] - 26:14, 31:21
**employment** [1] - 13:2
**end** [5] - 21:9, 21:19, 22:11, 23:4
**engage** [5] - 14:1, 26:15, 26:16, 26:18, 26:19
**engaged** [1] - 36:23
**ensure** [1] - 3:24
**enter** [2] - 3:11, 14:23
**entering** [1] - 37:5
**entice** [1] - 14:1
**entire** [2] - 34:1, 34:15
**entirety** [1] - 30:16
**entitled** [1] - 40:9
**equally** [1] - 23:25
**Esq** [2] - 1:15, 1:20
**essential** [2] - 25:22, 37:12
**event** [1] - 22:5
**Evidence** [1] - 28:16
**evidence** [7] - 8:17, 9:10, 9:12, 9:20, 27:17, 27:19
**exactly** [1] - 21:7
**examination** [2] - 10:1, 11:20
**examine** [1] - 27:16
**example** [3] - 21:1, 21:15, 24:15
**exceeds** [1] - 30:20
**except** [1] - 30:20
**exchange** [2] - 7:20, 30:17
**exclude** [1] - 8:16
**excuse** [2] - 16:18, 19:18
**executed** [1] - 30:12
**exercise** [1] - 8:24
**explain** [6] - 7:15, 7:24, 9:15, 14:13, 22:24, 25:22
**explained** [1] - 37:1
**explicit** [2] - 14:2, 26:19
**exploitation** [3] - 15:9, 26:8, 31:16
**expressed** [1] - 20:24
**extend** [1] - 25:11

## F

**fact** [6] - 17:5, 25:7, 26:9, 36:6, 36:22, 37:10
**factor** [1] - 22:17
**factors** [5] - 16:13, 21:18, 22:19, 29:4, 29:5
**facts** [7] - 10:18, 10:20, 29:8, 33:21, 35:12, 35:21, 35:24
**factual** [1] - 29:6
**faculties** [1] - 36:18
**fail** [1] - 32:4
**failing** [1] - 33:4
**failure** [1] - 31:24
**fair** [6] - 4:7, 5:22, 8:25, 11:21, 13:21, 23:4
**familiar** [1] - 10:2
**family** [1] - 3:16
**far** [3] - 5:12, 5:13, 25:19
**fashioning** [1] - 22:22
**fast** [1] - 22:16
**FBI** [1] - 3:14
**FEDERAL** [1] - 40:15
**Federal** [3] - 26:4, 28:15, 40:3
**federal** [6] - 13:9, 20:10, 20:21, 23:25, 30:13, 32:2
**fees** [1] - 31:14
**felony** [4] - 12:17, 13:5, 16:6, 17:3
**Fifth** [3] - 2:5, 10:25, 11:2
**figure** [2] - 20:9, 25:7
**figures** [1] - 20:17
**file** [5] - 8:17, 24:21, 24:25, 25:4, 38:12
**filed** [2] - 8:16, 25:25
**final** [1] - 38:11
**finally** [1] - 27:21
**fine** [1] - 27:5
**finish** [1] - 35:4
**firearm** [1] - 24:1
**firearms** [1] - 12:21
**Firm** [1] - 1:20
**first** [12] - 5:7, 7:13, 7:19, 8:20, 10:13, 12:19, 23:24, 25:7, 26:2, 27:13, 29:18, 31:17
**five** [4] - 5:2, 15:22, 27:4, 28:13
**Florida** [2] - 4:24, 4:25
**follow** [1] - 23:23
**followed** [1] - 15:20
**following** [1] - 9:12
**FOR** [1] - 1:1
**force** [3] - 18:3, 33:18, 34:18
**foregoing** [1] - 40:7
**foreign** [4] - 14:6, 14:7, 26:23, 27:1
**foremost** [3] - 10:13, 12:19, 23:24
**forfeit** [1] - 29:19
**forfeiture** [3] - 16:3, 27:7, 29:18
**forgive** [1] - 5:20
**form** [3] - 12:11, 19:20, 32:13
**formal** [2] - 13:3, 38:12
**format** [1] - 40:9
**forth** [1] - 37:12
**forward** [3] - 4:1, 6:23, 8:2
**four** [1] - 27:10
**Fourth** [1] - 1:16
**free** [3] - 18:7, 34:20, 38:7
**Freedom** [1] - 32:17
**front** [2] - 18:11, 25:5
**full** [4] - 4:15, 25:10, 25:15, 36:18
**fully** [4] - 17:22, 18:13, 37:4, 37:9
**future** [2] - 28:17, 33:14

## G

**gaps** [1] - 9:24
**generally** [4] - 10:2, 23:10, 23:12, 31:12
**GERACE** [1] - 1:14
**given** [2] - 11:17, 12:8
**glitches** [1] - 24:13
**Government** [5] - 9:22, 11:25, 12:4, 17:12, 22:21
**Government's** [3] - 9:16, 27:16, 32:23
**Grace** [1] - 2:2
**graduated** [1] - 5:17
**grand** [12] - 17:3, 17:6, 17:12, 17:13, 17:15, 17:23, 18:5, 19:10, 19:23, 27:13, 37:7
**grounds** [1] - 31:6
**group** [1] - 8:23
**grow** [1] - 4:22
**guidelines** [11] - 20:17, 21:1, 22:5, 25:16, 29:1, 29:3, 29:11, 29:16, 36:10, 37:2
**guilt** [1] - 27:22
**guilty** [20] - 13:10, 20:2, 20:3, 26:6, 26:10, 27:12, 27:14, 28:12, 29:8, 29:14, 34:25, 35:5, 36:5, 36:12, 36:13, 36:14, 36:25, 37:9, 37:16
**gun** [3] - 24:1, 25:2, 25:13

**guns** [1] - 21:5
**guys** [8] - 3:10, 8:2, 8:6, 11:12, 14:19, 38:1, 38:4, 39:2

## H

**half** [1] - 6:25
**hand** [2] - 4:11, 19:1
**handed** [1] - 18:21
**hard** [1] - 6:13
**head** [4] - 9:3, 22:23, 23:13, 37:17
**Healey** [2] - 1:15, 3:13
**HEALEY** [8] - 3:4, 3:12, 25:24, 26:18, 28:10, 32:8, 38:18, 39:3
**Hearing** [1] - 39:7
**HEARING** [1] - 1:9
**hearing** [3] - 4:13, 6:25, 25:6
**hearings** [1] - 8:18
**held** [2] - 27:20, 40:8
**helping** [1] - 30:6
**hereby** [1] - 40:5
**herein** [2] - 35:14, 37:11
**high** [5] - 5:16, 12:6, 22:4, 22:11, 23:12
**history** [5] - 21:22, 21:23, 22:2, 22:8
**hold** [1] - 11:7
**Honor** [18] - 3:12, 3:15, 6:24, 7:5, 25:24, 25:25, 28:14, 30:15, 31:4, 31:10, 31:15, 32:8, 33:25, 34:6, 38:18, 38:20, 39:3, 39:4
**HONORABLE** [1] - 1:10
**hour** [1] - 6:25
**Hyde** [1] - 31:10

## I

**II** [1] - 1:14
**illness** [2] - 6:9, 36:20
**immediately** [1] - 30:4
**immigration** [2] - 5:9, 28:20
**impartial** [1] - 9:1
**important** [6] - 8:18, 9:1, 9:9, 9:17, 9:21, 23:25
**impose** [1] - 23:10
**imposed** [3] - 15:18, 30:20
**imposing** [1] - 29:5
**imprisonment** [5] - 15:11, 15:17, 15:19, 19:6, 27:4
**IN** [1] - 1:1
**include** [2] - 16:15, 32:10
**including** [2] - 26:24, 33:22
**incorporated** [3] - 24:10, 35:14, 37:11
**incorrect** [1] - 36:1
**increase** [3] - 20:25, 21:2, 21:8
**incriminate** [1] - 11:1
**independent** [1] - 37:10
**indicate** [1] - 3:19
**indicates** [9] - 26:2, 29:1, 29:7, 29:10, 30:1, 30:16, 31:4, 33:16, 33:25
**indict** [3] - 17:13, 17:14
**indicted** [2] - 17:17, 27:13
**indictment** [12] - 4:5, 7:9, 13:15, 13:18, 17:2, 17:10, 17:11, 17:15, 18:11, 19:19, 19:23, 34:25
**induce** [3] - 14:1, 18:4, 34:24
**induced** [1] - 26:14
**ineffective** [1] - 31:2
**influence** [1] - 36:20
**information** [35] - 3:20, 4:5, 6:3, 6:22, 7:9, 7:20, 7:25, 8:1, 8:12, 12:15, 13:15, 13:18, 13:20, 13:23, 14:11, 15:6, 15:8, 16:25, 17:16, 17:20, 17:24, 18:24, 19:11, 19:24, 20:2, 26:7, 27:12, 29:22, 30:5, 30:11, 31:24, 32:19, 36:5, 36:12
**Information** [1] - 32:17
**informed** [1] - 37:5
**ingesting** [1] - 25:3
**injured** [1] - 21:5
**innocent** [1] - 27:21
**institution** [1] - 23:20
**instructed** [1] - 11:7
**instructions** [1] - 12:9
**intelligently** [1] - 37:8
**intent** [1] - 29:14
**intentionally** [1] - 19:22
**interest** [1] - 29:23
**interrupt** [1] - 27:24
**interrupts** [2] - 13:16, 26:17
**interstate** [3] - 14:6, 26:23, 26:25
**interview** [1] - 37:20
**investigate** [1] - 32:19
**investigation** [5] - 32:20, 37:19, 38:3, 38:11, 38:24
**involved** [1] - 24:8
**involving** [1] - 21:4
**item** [1] - 16:5
**items** [3] - 29:20, 29:24, 38:10
**itself** [2] - 9:19, 16:4

## J

**jail** [1] - 25:14
**job** [1] - 13:1
**Jr** [1] - 1:20
**Judge** [1] - 3:4
**judges** [3] - 20:18, 22:18, 22:19
**Judicial** [1] - 40:10
**July** [2] - 1:11, 3:1
**June** [1] - 34:8
**jurisdiction** [2] - 20:21, 37:13
**jurisdictions** [1] - 20:10
**jurors** [1] - 12:3
**jury** [18] - 8:21, 9:1, 9:15, 17:3, 17:6, 17:12, 17:13, 17:16, 17:23, 18:5, 19:10, 19:23, 27:14, 27:15, 27:20, 27:22, 37:7
**jury's** [1] - 11:7

## K

**kind** [6] - 6:9, 7:24, 10:4, 10:6, 21:23, 27:25
**kinds** [1] - 13:1
**knowing** [1] - 37:9
**knowingly** [3] - 19:21, 33:17, 37:7
**known** [3] - 12:20, 20:7, 30:11
**Krista** [3] - 2:2, 3:25, 19:1
**Kyle** [15] - 1:15, 3:10, 3:12, 7:24, 11:4, 11:11, 11:19, 16:18, 18:20, 18:21, 25:21, 28:9, 32:7, 38:1, 38:17
**Kyle's** [1] - 28:1
**kyle.healey@usdoj.gov** [1] - 1:18

## L

**laptops** [1] - 29:21
**last** [1] - 36:11
**lastly** [1] - 33:25
**Law** [1] - 2:2
**law** [1] - 33:22
**lawyer** [4] - 7:22, 9:14, 22:21, 34:16
**lawyers** [9] - 3:19, 7:21, 8:24, 9:2, 9:5, 9:21, 22:19, 38:4
**lead** [3] - 7:3, 12:18, 32:1
**lead-up** [1] - 7:3
**least** [4] - 15:22, 16:2, 17:6, 38:25
**legitimate** [2] - 24:23
**lengthy** [1] - 23:10
**less** [1] - 27:6
**level** [7] - 20:23, 21:12, 21:13, 21:20, 22:7, 29:11, 29:13
**life** [1] - 15:23
**lifetime** [1] - 27:5
**light** [1] - 36:8
**likely** [2] - 22:1, 24:10
**limitations** [1] - 32:11
**Limitations** [1] - 33:13
**line** [1] - 37:19
**list** [1] - 29:20
**listed** [2] - 29:22, 31:6
**lived** [1] - 5:2
**local** [4] - 13:10, 23:25, 30:13, 31:20
**look** [2] - 22:18, 35:16
**looks** [1] - 35:20
**low** [1] - 22:11

## M

**mailed** [2] - 14:5, 26:22
**major** [1] - 5:17
**mandatory** [6] - 15:14, 15:18, 16:1, 23:2, 27:6, 27:7
**manner** [1] - 36:16
**manual** [3] - 20:17, 22:6
**marijuana** [1] - 24:16
**marshals** [2] - 28:6, 38:23
**match** [1] - 20:11
**materials** [3] - 14:5, 26:22, 29:19
**math** [1] - 22:14
**matter** [3] - 22:15, 29:20, 40:9
**maximum** [5] - 15:2, 15:5, 15:14, 23:3, 30:21
**McKinney** [2] - 2:3, 3:14
**mean** [2] - 11:3, 24:14
**meaning** [2] - 14:17, 36:24
**means** [11] - 4:1, 10:17, 10:20, 11:3, 11:24, 12:3, 12:20, 16:6, 26:24, 28:2, 37:19
**meant** [1] - 14:14
**mechanical** [1] - 2:8
**medications** [1] - 36:21
**meet** [1] - 22:10
**meetings** [1] - 24:22
**memories** [1] - 9:24
**mental** [2] - 6:9, 36:19
**mentioned** [3] - 13:13, 13:17, 20:4
**met** [1] - 6:24
**Miami** [3] - 4:23, 4:24, 4:25
**MICHAEL** [1] - 1:10
**middle** [2] - 4:18, 22:10
**might** [7] - 14:20, 17:14, 22:20, 24:14, 24:18, 24:22
**mind** [1] - 19:2
**minimum** [7] - 15:10, 15:14, 15:18, 22:2, 23:3, 27:3, 27:4
**minor** [5] - 3:16, 14:1, 14:3, 26:15, 32:15
**minutes** [2] - 10:18, 35:11
**misconduct** [1] - 31:3
**missed** [1] - 24:22
**mitigated** [1] - 23:11
**MITSNEFES** [1] - 1:6
**Mitsnefes** [5] - 3:8, 3:17, 4:17, 26:3, 34:7
**moment** [3] - 7:11, 15:13, 15:21
**monetary** [1] - 29:25
**monitoring** [1] - 32:11
**months** [2] - 22:11
**morning** [1] - 18:21
**most** [7] - 7:16, 9:1, 9:21, 24:3, 31:6, 38:8

**motion** [1] - 30:24
**motions** [1] - 8:15
**move** [3] - 6:23, 8:19, 12:24
**moved** [1] - 5:3
**movies** [1] - 10:3
**MR** [18] - 3:4, 3:12, 3:17, 6:24, 7:5, 18:12, 18:15, 18:18, 25:24, 26:18, 28:10, 32:8, 34:12, 35:15, 38:18, 38:20, 39:3, 39:4
**must** [3] - 17:7, 26:12, 31:22

## N

**name** [2] - 4:16, 4:18
**narcotics** [1] - 36:20
**narrow** [1] - 31:6
**nation** [1] - 20:12
**national** [1] - 28:22
**nature** [4] - 19:8, 23:11, 36:24, 38:21
**necessary** [2] - 25:12, 28:4
**need** [4] - 25:23, 28:17, 30:3
**needs** [1] - 33:5
**negotiated** [1] - 34:16
**negotiations** [2] - 14:24, 37:2
**never** [2] - 12:21, 23:15
**new** [2] - 25:1, 25:13
**next** [3] - 9:4, 29:25, 37:18
**nine** [1] - 29:17
**NO** [1] - 1:5
**no-action** [1] - 24:21
**nobody** [1] - 10:14
**normally** [1] - 38:24
**note** [2] - 3:15, 18:19
**nothing** [1] - 4:13
**Notification** [1] - 31:19
**notification** [1] - 29:13
**notify** [1] - 31:20
**number** [18] - 3:21, 8:22, 10:12, 12:8, 20:24, 20:25, 21:2, 21:6, 21:8, 21:14, 21:19, 21:21, 22:7, 22:10, 22:11, 22:18, 23:22, 25:9
**numerous** [1] - 29:21

## O

**oath** [2] - 3:25, 9:25
**objections** [2] - 38:12, 38:13
**obligated** [1] - 4:1
**obligation** [3] - 11:25, 13:6, 29:2
**obligations** [4] - 29:17, 30:7, 33:6, 33:11
**obscenity** [1] - 32:13
**observations** [1] - 36:15
**obviously** [2] - 7:14, 11:17
**occur** [1] - 38:10
**occurs** [1] - 37:23
**OF** [4] - 1:1, 1:3, 1:8, 40:1
**Offender** [1] - 31:19
**offenders** [1] - 22:3
**offense** [20] - 10:15, 10:21, 20:1, 20:20, 20:23, 21:11, 21:13, 21:20, 22:7, 23:11, 26:5, 26:10, 26:11, 28:22, 30:2, 32:2, 32:16, 32:20, 36:6, 38:22
**offenses** [3] - 19:6, 31:16, 32:1
**offering** [2] - 29:8, 36:4
**Office** [2] - 1:16, 30:18
**office** [2] - 30:12, 37:22
**officer** [4] - 23:21, 24:17, 38:7, 38:8
**Official** [1] - 40:3
**OFFICIAL** [1] - 40:15
**oftentimes** [1] - 24:13
**OHIO** [1] - 1:1
**Ohio** [6] - 1:17, 1:22, 2:5, 13:25, 37:14, 40:5
**old** [1] - 14:4
**once** [1] - 11:16
**one** [13] - 7:8, 7:9, 7:13, 8:1, 9:1, 14:4, 15:6, 19:5, 19:6, 20:1, 22:6, 28:11, 36:12
**one-count** [2] - 20:1, 36:12
**open** [2] - 3:3, 19:7
**opening** [5] - 9:4, 9:6, 9:7, 9:8, 9:9
**opportunities** [1] - 13:2
**oppose** [1] - 29:11
**order** [4] - 8:16, 17:9, 25:12, 34:23
**ordered** [1] - 30:2
**ordnances** [2] - 12:22, 24:2
**OSWALL** [10] - 3:17, 6:24, 7:5, 18:12, 18:15, 18:18, 34:12, 35:15, 38:20, 39:4
**Oswall** [3] - 1:20, 1:20, 3:17
**outlined** [1] - 16:4
**own** [4] - 12:21, 18:7, 27:18, 34:20

## P

**p.m** [2] - 3:2, 39:7
**page** [3] - 22:9, 34:10, 40:9
**pages** [1] - 26:1
**panoply** [1] - 25:10
**paragraph** [19] - 26:2, 26:11, 27:2, 27:10, 28:13, 28:20, 28:25, 29:6, 29:17, 30:7, 30:15, 31:4, 31:10, 31:15, 32:17, 32:21, 33:2, 33:15, 33:25
**parole** [1] - 23:16
**part** [5] - 11:13, 29:25, 30:10, 32:8, 32:10
**particular** [1] - 21:17
**particulars** [1] - 8:6
**parties** [2] - 34:3, 34:4
**party** [1] - 31:12
**passed** [1] - 20:7
**path** [1] - 8:2
**pay** [3] - 30:2, 30:3
**penalties** [5] - 15:2, 15:6, 20:5, 27:2, 29:25
**penalty** [1] - 4:11
**pending** [1] - 13:10
**people** [10] - 6:2, 8:22, 8:23, 11:2, 17:6, 17:7, 22:3, 24:3, 38:1, 38:5
**per** [2] - 16:3, 27:7
**perhaps** [2] - 13:2, 33:9
**perjury** [1] - 4:11
**permitted** [1] - 33:8
**person** [6] - 12:20, 17:5, 21:9, 22:14, 23:21, 26:15
**persuade** [1] - 14:1
**persuaded** [1] - 26:14
**phase** [2] - 8:20, 8:21
**phones** [1] - 29:21
**physical** [1] - 36:19
**pieces** [1] - 8:16
**Plaintiff** [2] - 1:4, 1:13
**plea** [35] - 3:8, 4:6, 6:4, 8:12, 10:17, 10:19, 13:11, 14:24, 16:4, 25:22, 25:25, 26:9, 28:12, 29:10, 29:22, 30:9, 30:12, 30:18, 32:21, 33:2, 33:3, 33:7, 33:9, 33:11, 33:14, 33:16, 34:10, 34:15, 35:13, 36:10, 36:25, 37:3, 37:5, 37:9, 37:15
**PLEA** [1] - 1:9
**plead** [8] - 20:1, 26:6, 27:14, 29:8, 29:14, 34:25, 36:5, 36:12
**pleading** [1] - 27:12
**point** [5] - 4:1, 9:9, 20:21, 21:24, 24:24
**points** [11] - 20:24, 21:1, 21:3, 21:6, 21:8, 21:12, 21:15, 21:16, 21:19, 21:21, 22:7
**position** [2] - 20:6, 22:15
**possess** [1] - 12:21
**possessing** [1] - 32:13
**possession** [1] - 36:18
**possible** [6] - 14:19, 15:2, 15:6, 19:23, 20:5, 38:22
**possibly** [2] - 12:25, 25:14
**potential** [2] - 16:19, 36:25
**Potter** [1] - 2:4
**presence** [1] - 6:10
**present** [5] - 3:16, 17:7, 17:12, 27:17, 27:19
**Present** [1] - 2:1
**presentation** [3] - 9:11, 9:12, 9:20
**presented** [5] - 17:23, 18:4, 19:10, 19:23, 37:7
**presentence** [4] - 37:19, 38:2, 38:11, 38:23
**PRESIDING** [1] - 1:10
**pressure** [1] - 34:19
**presumed** [1] - 27:21
**pretrial** [1] - 8:15
**pretty** [2] - 12:6, 23:12
**prevailing** [1] - 31:11
**previously** [1] - 27:3
**prison** [1] - 13:5
**privilege** [1] - 6:22
**probable** [2] - 17:4, 17:8
**probation** [5] - 23:16, 23:21, 24:17, 38:6, 38:8
**Probation** [5] - 21:9, 22:13, 24:14, 24:20, 37:20
**problems** [1] - 6:10
**Procedure** [2] - 26:5, 28:16
**proceed** [11] - 3:20, 12:14, 13:18, 13:20, 16:24, 16:25, 17:16, 17:17, 17:24, 19:24, 34:25
**proceeded** [1] - 13:14
**proceedings** [8] - 5:9, 7:17, 13:16, 26:17, 28:18, 36:22, 36:23, 40:8
**Proceedings** [2] - 2:8, 3:3
**PROCEEDINGS** [1] - 1:8
**process** [3] - 7:21, 10:2, 28:1
**produce** [1] - 7:25
**produced** [3] - 2:9, 14:5, 26:21
**producing** [2] - 14:2, 26:20
**programs** [1] - 32:14
**prohibited** [2] - 12:20, 32:12
**prohibitions** [1] - 32:13
**promises** [4] - 18:3, 33:19, 34:3, 34:22
**proof** [2] - 11:23, 27:22
**properly** [1] - 28:4
**proposed** [1] - 19:8
**prosecute** [1] - 30:8
**prosecution** [3] - 19:11, 32:1, 32:20
**prosecutions** [1] - 30:14
**prosecutorial** [1] - 31:3
**protections** [1] - 28:15
**prove** [2] - 11:25, 26:12
**proven** [2] - 12:2, 12:4

**provide** [1] - 30:5
**Providing** [2] - 19:3, 34:12
**providing** [1] - 35:15
**psych** [1] - 5:17
**psychological** [1] - 24:6
**public** [1] - 5:15
**pulled** [1] - 25:1
**punishable** [2] - 13:5, 19:6
**purpose** [2] - 14:2, 26:20
**purposes** [2] - 35:14, 37:11
**pursuant** [6] - 16:8, 16:11, 26:4, 27:8, 27:9, 40:6
**put** [5] - 9:8, 11:4, 11:13, 20:15, 34:18

## Q

**questionnaire** [1] - 13:3
**questions** [14] - 3:21, 4:2, 4:3, 5:6, 6:5, 6:25, 8:24, 9:25, 11:5, 11:12, 11:17, 11:19, 36:17

## R

**raise** [2] - 4:10, 21:6
**range** [6] - 22:12, 22:15, 22:25, 23:1, 23:4, 29:4
**reached** [1] - 25:25
**read** [5] - 6:3, 6:4, 30:16, 33:16, 35:17
**reading** [1] - 5:23
**ready** [1] - 3:4
**real** [1] - 10:9
**really** [1] - 11:3
**Realtime** [1] - 40:3
**REALTIME** [1] - 40:15
**reappear** [1] - 38:10
**reason** [1] - 24:23
**reasonable** [5] - 11:24, 12:1, 12:5, 26:12, 27:23
**reasonably** [1] - 32:16
**received** [1] - 33:23
**receiving** [1] - 19:9
**recess** [1] - 39:5
**recommend** [1] - 24:9
**recommendations** [2] - 32:24, 33:7
**recommended** [1] - 32:14
**record** [5] - 3:11, 18:19, 19:15, 22:24, 23:15
**recorded** [1] - 2:8
**reduce** [2] - 21:16, 21:18
**reduction** [2] - 29:11, 30:24
**Reform** [1] - 20:8
**regard** [2] - 10:13, 23:5
**regarding** [2] - 28:16, 33:20
**register** [1] - 31:18
**Registration** [1] - 31:19
**registration** [2] - 31:22, 31:25
**regulations** [3] - 23:22, 24:11, 40:10
**related** [2] - 31:16, 32:16
**release** [13] - 15:20, 15:21, 23:9, 23:10, 24:11, 24:13, 24:19, 25:4, 25:8, 25:11, 25:15, 32:4, 32:10
**released** [1] - 23:20
**relevant** [1] - 31:24
**relieved** [2] - 33:6, 33:10
**remain** [1] - 38:23
**remove** [1] - 28:23
**repeat** [1] - 22:3
**report** [4] - 21:10, 24:21, 25:5, 38:2
**reported** [1] - 40:8
**Reporter** [3] - 2:4, 13:16, 40:4
**REPORTER** [2] - 40:1, 40:15
**reporter** [1] - 26:17
**representation** [1] - 33:23
**representations** [1] - 34:4
**represented** [1] - 7:14
**request** [2] - 17:13, 32:19
**requested** [1] - 30:5
**required** [2] - 32:13, 32:14
**requirement** [1] - 31:25
**requires** [1] - 31:20
**residing** [1] - 31:21
**residual** [1] - 6:12
**responding** [1] - 36:17
**responsibility** [4] - 21:15, 21:16, 29:12, 33:4
**rest** [1] - 15:22
**restitution** [5] - 16:2, 16:15, 27:6, 30:2, 30:6
**result** [2] - 31:17, 33:18
**return** [1] - 17:10
**riding** [1] - 25:19
**rights** [13] - 4:4, 7:7, 7:12, 10:12, 12:14, 13:14, 17:23, 19:7, 27:10, 27:11, 28:11, 33:12, 36:9
**road** [4] - 12:18, 12:25, 13:1, 24:25
**robberies** [1] - 21:4
**Royalty** [1] - 2:2
**RPR** [2] - 2:4, 40:15
**Rule** [1] - 26:4
**ruler** [1] - 22:9
**Rules** [3] - 26:4, 28:15, 28:16
**rules** [2] - 23:22, 24:11
**run** [1] - 21:22

## S

**s/Caryl** [1] - 40:14
**sat** [1] - 10:9
**satisfaction** [1] - 6:6
**satisfied** [3] - 33:23, 35:8, 36:18
**saw** [1] - 19:14
**scenario** [1] - 7:11
**scenarios** [1] - 7:11
**school** [3] - 5:13, 5:15, 5:16
**schooling** [1] - 5:12
**seat** [2] - 8:22, 8:25
**seated** [1] - 7:15
**second** [6] - 10:24, 12:24, 25:8, 26:21, 27:24, 32:8
**Section** [1] - 40:6
**section** [1] - 29:16
**see** [2] - 38:3, 38:11
**seek** [2] - 30:24, 31:7
**selected** [1] - 12:3
**selection** [1] - 8:21
**sentence** [10] - 16:23, 22:22, 23:2, 27:3, 29:5, 30:19, 30:20, 30:23, 30:25, 33:1
**sentenced** [1] - 31:5
**sentences** [4] - 16:20, 20:9, 20:19, 38:22
**Sentencing** [3] - 20:8, 20:15, 20:16
**sentencing** [12] - 20:13, 22:12, 29:1, 29:3, 29:4, 29:6, 32:24, 33:5, 33:7, 36:10, 37:1, 38:13
**sentencings** [1] - 15:12
**September** [1] - 13:24
**series** [2] - 8:7, 9:25
**serious** [1] - 25:3
**sets** [1] - 37:12
**setting** [1] - 13:4
**seven** [1] - 28:25
**Sex** [1] - 31:18
**sexual** [2] - 15:8, 26:7
**sexually** [2] - 14:2, 26:19
**shake** [1] - 9:23
**shall** [2] - 27:6, 31:1
**shape** [1] - 12:10
**sheriff** [1] - 31:21
**shipped** [2] - 14:6, 26:22
**short** [1] - 28:14
**shortcomings** [1] - 9:15
**show** [3] - 9:24, 34:9, 35:13
**side** [5] - 21:22, 22:6, 22:8, 35:20, 38:4
**sides** [3] - 8:24, 9:13, 38:12
**sign** [7] - 18:20, 18:22, 19:14, 19:19, 34:14, 35:21, 35:23
**signature** [5] - 18:24, 19:15, 19:16, 34:11, 35:20
**signed** [5] - 7:4, 18:16, 18:17, 34:6, 34:7
**single** [3] - 17:19, 20:20, 36:5
**situation** [8] - 6:13, 10:14, 11:4, 11:18, 11:19, 20:18, 21:17, 22:20
**situations** [1] - 25:9
**six** [2] - 28:20, 38:24
**skipped** [1] - 27:25
**small** [1] - 24:13
**smart** [1] - 11:14
**smartest** [1] - 14:23
**smoking** [1] - 24:15
**software** [1] - 32:12
**sole** [1] - 32:25
**solemnly** [1] - 4:11
**someone** [2] - 20:6, 26:13
**sometimes** [4] - 9:5, 9:6, 9:7, 38:7
**somewhat** [1] - 24:23
**sorry** [4] - 13:17, 26:18, 28:9, 32:7
**sort** [1] - 20:11
**sorted** [1] - 24:18
**sounds** [1] - 6:16
**SOUTHERN** [1] - 1:1
**Southern** [3] - 13:25, 37:13, 40:5
**special** [5] - 16:5, 16:7, 27:7, 31:15, 32:9
**Speedy** [1] - 33:13
**stage** [1] - 3:22
**stand** [3] - 11:5, 11:16, 39:5
**start** [1] - 20:18
**starting** [1] - 22:17
**starts** [1] - 23:12
**state** [4] - 13:9, 23:25, 30:13, 32:1
**statement** [8] - 9:7, 9:9, 10:18, 10:20, 29:8, 35:12, 35:21, 35:23
**statements** [6] - 9:5, 9:6, 9:10, 28:13, 28:16, 28:18
**states** [1] - 13:24
**STATES** [3] - 1:1, 1:3, 1:14
**States** [20] - 1:15, 1:16, 3:7, 3:13, 5:8, 7:23, 26:3, 26:12, 28:18, 28:22, 28:24, 29:10, 30:5, 30:8, 30:17, 33:6, 34:16, 40:4, 40:6, 40:11
**statute** [1] - 31:25
**Statute** [1] - 33:13
**statutory** [3] - 23:3, 29:4, 30:21
**stenographically** [1] - 40:8
**stenography** [1] - 2:8
**step** [2] - 9:4, 37:18
**Stewart** [1] - 2:4
**stick** [1] - 24:24
**still** [1] - 20:8
**stipulation** [1] - 29:7
**stipulations** [1] - 32:24
**Street** [3] - 1:16, 1:21, 2:5
**stuck** [1] - 22:15
**student** [1] - 31:22
**stuff** [3] - 8:18, 9:17, 10:4

**stupid** [1] - 6:16
**subject** [1] - 5:8
**subpoenaed** [1] - 28:4
**substance** [2] - 6:9, 24:7
**successful** [1] - 8:19
**suffering** [1] - 36:19
**suggestions** [1] - 38:6
**suing** [1] - 31:13
**Suite** [2] - 1:17, 1:21
**summary** [1] - 31:4
**supercedes** [1] - 34:3
**supervised** [13] - 15:20, 15:21, 23:9, 23:10, 24:11, 24:12, 24:19, 25:4, 25:8, 25:11, 25:15, 32:4, 32:10
**supervision** [1] - 27:5
**supported** [1] - 37:9
**Supreme** [1] - 22:16
**surprised** [1] - 6:1
**swear** [1] - 4:11
**sworn** [1] - 11:16
**system** [3] - 6:18, 7:8, 20:22
**systematic** [1] - 20:12

## T

**table** [2] - 3:13, 7:15
**television** [1] - 10:3
**tendered** [1] - 3:19
**term** [8] - 15:17, 15:19, 15:20, 23:8, 23:10, 25:11, 25:15, 32:10
**terms** [5] - 20:12, 25:8, 25:23, 31:12, 32:4
**testify** [7] - 9:23, 11:6, 11:15, 11:18, 12:9, 27:17, 27:19
**testimony** [1] - 4:12
**that'll** [1] - 23:1
**THE** [180] - 1:1, 1:1, 1:10, 3:5, 3:10, 3:18, 3:23, 3:24, 4:8, 4:9, 4:14, 4:15, 4:17, 4:18, 4:19, 4:20, 4:23, 4:24, 4:25, 5:1, 5:2, 5:5, 5:10, 5:11, 5:15, 5:18, 5:20, 5:22, 5:25, 6:1, 6:7, 6:8, 6:15, 6:16, 6:20, 6:21, 7:3, 7:6, 7:18, 7:19, 8:4, 8:5, 8:8, 8:9, 9:3, 9:4, 9:18, 9:19, 10:5, 10:6, 10:8, 10:9, 10:11, 10:12, 10:23, 10:24, 11:10, 11:11, 11:22, 11:23, 12:7, 12:8, 12:12, 12:13, 12:16, 12:17, 12:23, 12:24, 13:8, 13:9, 13:12, 13:13, 13:17, 13:22, 13:23, 14:9, 14:10, 14:12, 14:13, 14:15, 14:16, 14:18, 14:19, 14:21, 14:22, 14:25, 15:1, 15:4, 15:5, 15:16, 15:17, 15:25, 16:1, 16:10, 16:11, 16:14, 16:15, 16:17, 16:18, 16:21, 16:22, 17:18, 17:19, 17:21, 17:22, 18:1, 18:2, 18:6, 18:7, 18:9, 18:10, 18:13, 18:16, 18:19, 18:25, 19:1, 19:4, 19:13, 19:14, 19:17, 19:18, 20:3, 20:4, 21:25, 22:1, 22:23, 22:24, 23:7, 23:8, 23:13, 23:14, 23:18, 23:19, 25:17, 25:18, 25:20, 25:21, 27:24, 28:8, 28:9, 32:3, 32:6, 32:7, 34:9, 34:13, 34:14, 34:17, 34:18, 34:21, 34:22, 35:2, 35:3, 35:7, 35:8, 35:10, 35:11, 35:16, 35:18, 35:19, 35:22, 35:23, 35:25, 36:1, 36:3, 36:4, 36:7, 36:8, 36:14, 36:15, 37:17, 37:18, 37:24, 37:25, 38:15, 38:16, 38:19, 38:21, 39:1, 39:2, 39:5
**theft** [1] - 20:22
**therefore** [1] - 37:4
**they've** [1] - 24:17
**thinks** [1] - 24:17
**third** [1] - 29:12
**threats** [2] - 18:2, 33:19
**three** [4] - 21:16, 24:22, 27:2, 31:23
**throughout** [1] - 27:21
**Thursday** [2] - 1:11, 3:1
**timely** [2] - 21:15, 29:13
**TIO** [1] - 3:14
**Title** [1] - 40:6
**today** [8] - 3:8, 3:18, 6:18, 6:23, 8:10, 28:17, 35:4, 36:16
**together** [1] - 20:15
**took** [1] - 11:16
**total** [2] - 21:20, 22:7
**toward** [1] - 35:19
**trans** [1] - 26:23
**transcript** [3] - 2:8, 40:7, 40:9
**TRANSCRIPT** [1] - 1:8
**transmitted** [1] - 26:22
**transported** [3] - 14:6, 26:23, 26:25
**treat** [1] - 34:23
**treated** [1] - 6:8
**treatment** [2] - 25:12, 32:14
**trial** [18] - 7:25, 8:10, 8:11, 8:13, 8:20, 8:21, 10:10, 10:13, 10:16, 11:3, 11:12, 12:9, 15:2, 27:14, 27:15, 27:22, 28:2, 35:5
**Trial** [1] - 33:13
**trick** [1] - 4:3
**tried** [1] - 20:9
**trips** [1] - 24:3
**trouble** [1] - 6:2
**true** [1] - 40:7
**truth** [3] - 4:2, 4:13
**truthful** [1] - 3:24
**try** [2] - 8:25, 9:23
**trying** [1] - 9:15
**two** [7] - 7:8, 7:10, 21:16, 22:10, 25:6, 26:11, 29:11
**two-level** [1] - 29:11
**type** [1] - 5:8
**typical** [1] - 5:4
**typically** [3] - 7:22, 31:20, 33:4

## U

**U.S** [1] - 2:4
**unanimous** [1] - 12:2
**under** [21] - 4:11, 7:11, 9:25, 11:19, 15:6, 16:2, 17:19, 28:15, 29:11, 29:13, 30:24, 30:25, 31:6, 31:18, 32:1, 32:2, 32:18, 33:6, 33:11, 33:12, 36:20
**understandings** [1] - 34:4
**undertaken** [1] - 37:2
**undue** [1] - 34:18
**UNITED** [3] - 1:1, 1:3, 1:14
**United** [20] - 1:15, 1:16, 3:7, 3:13, 5:8, 7:23, 26:3, 26:12, 28:18, 28:22, 28:24, 29:10, 30:5, 30:7, 30:17, 33:6, 34:16, 40:4, 40:6, 40:11
**University** [1] - 5:16
**unless** [2] - 17:2, 17:3
**unusual** [2] - 24:12, 38:5
**up** [24] - 4:22, 5:3, 7:3, 9:3, 11:17, 12:13, 12:25, 15:10, 16:12, 19:1, 20:11, 22:13, 22:23, 23:13, 24:3, 27:4, 27:5, 27:12, 28:11, 28:14, 29:23, 32:18, 37:17
**update** [1] - 31:22
**urine** [1] - 24:15
**USC** [8] - 15:9, 16:2, 16:9, 16:11, 27:8, 30:24, 30:25, 32:2

## V

**valuable** [2] - 10:24, 11:9
**verdict** [1] - 12:2
**versus** [1] - 3:8
**VI** [1] - 22:4
**victim** [4] - 3:16, 14:4, 16:3, 27:7
**victim's** [1] - 21:7
**victims** [2] - 16:16, 30:2
**video** [1] - 14:3
**videos** [1] - 29:19
**violate** [2] - 25:8, 33:3
**violation** [4] - 15:9, 25:5, 32:3, 33:2
**visual** [5] - 14:3, 14:4, 26:20, 26:21, 26:24
**voluntarily** [4] - 17:24, 19:22, 33:17, 37:8
**voluntary** [3] - 18:7, 34:20, 37:9
**vs** [1] - 1:5

## W

**wait** [1] - 9:7
**waive** [6] - 17:2, 17:11, 17:15, 18:4, 19:9, 34:24
**waived** [2] - 19:22, 37:6
**waiver** [7] - 18:10, 18:24, 19:19, 27:10, 30:15, 31:1
**waives** [2] - 30:19, 30:22
**waiving** [1] - 33:12
**wants** [1] - 24:20
**watched** [2] - 18:20, 18:22
**ways** [1] - 7:8
**weeks** [1] - 38:25
**WESTERN** [1] - 1:2
**where'd** [1] - 4:22
**Will's** [1] - 19:15
**William** [1] - 1:20
**willing** [3] - 10:21, 12:13, 13:20
**willoswall@theoswallfirm.com** [1] - 1:23
**wish** [2] - 3:20, 36:11
**withdraw** [2] - 26:8, 26:9
**witness** [4] - 9:22, 11:4, 11:5, 11:16
**witnesses** [5] - 27:16, 27:18, 28:1, 28:3, 28:5
**words** [1] - 17:19
**writing** [1] - 5:24
**written** [1] - 38:12

## Y

**year** [2] - 13:5, 19:6
**years** [9] - 14:4, 15:10, 15:11, 15:14, 15:22, 22:13, 27:4, 27:5
**years'** [1] - 27:4
**yourself** [2] - 4:21, 11:1

## Z

**Zeller** [1] - 2:2