UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO.: 1:26CR00065-001 |
| Plaintiff, | : | |
| vs. | : | LETTERS OF SUPPORT |
| DAVID MITSNEFES | : | Judge Barrett |
| Defendant. | : | |

Cincinnati Children's
changing the outcome together

Nephrology & Hypertension

Mark Mitsnefes, MD, MS
Professor of Pediatrics

Interim Division Director

Program Director
Clinical Translational
Research Center (Schubert
Research Clinic)

Cincinnati Children's Hospital
Medical Center
3333 Burnet Avenue
Cincinnati, OH 45229-3026

Phone: 513-636-4531
Fax: 513-636-7407
Mark.mitsnefes@cchmc.org

July 24, 2026

Re: David Mitsnefes

Dear Judge Barrett:

First, my family and I are deeply sorry for what David did. We are sorry for what the victims, their family, friends, and community have had to endure.

Our family is a first-generation American immigrant family. We came to the United States on October 16, 1992, as refuge seeking religious freedom and better future for our children. David was born four months later. We worked hard and, before David's arrest, thought we were a typical American success story that have achieved what is known as the American dream. I passed the exams, completed training in pediatrics, finished a fellowship in pediatric nephrology in 2000, and was hired as faculty at Cincinnati Children's Hospital Medical Center. Currently, I serve as the Interim Director of the Division of Nephrology and Hypertension and the Program Director of the Clinical and Translational Research Center (Schubert Research Clinic).

We built a good life, found a welcoming community, and became active members of our synagogue, Chabad of Blue Ash, where David was integral part. Our Rabbi and his wife Chana, who are the parents of the victims, became close family friends. We had our Jewish wedding in their house because we could not have one in the Soviet Union. We did several trips to Israel together. The Rabbi and Chana flew for a funeral of my father-in-law in Miami. The Rabbi also flew to Miami for my mom's funeral. I was called to check on the Rabbi's sick children. My wife and Chana spent many Shabbat evenings together; they prepared Shabbat lunches for the community every week and cooked for the Jewish Holidays. Everything seemed to be going well, and we had many hopes for the future. Our children graduated from college and became independent. We looked forward to having our children married, having grandchildren and a growing family.

Until December 10, we indeed were living the American dream. On December 11, that dream and our life became a nightmare.

After house search was completed, David asked my wife, "Mom, do you hate me?" She said "No, I do not hate you. You are always my child and I love you". The second thing David told my wife was that he needed help, he needed treatment. That very day, he spent hours searching for a therapist. He understood that he was sick. When I came back from work and learned what happened, David simply said to me "I ruined my life and others."

Since the day we learned about this, we have searched for answers to many painful questions: Why did he do it? Why did this darkness overcome him? What triggered this behavior? How the person who admires the Rabbi and his family could do what he did to them? Could we have prevented it? What did we do wrong as parents? We thought we did our best to give our children a safe, stable, and loving home, and to teach them the right values.

As a physician-scientist, I have spent my career evaluating scientific evidence. Since David's arrest, I have devoted many hours reviewing relevant literature to understand what happened. While no single theory (there are more than ten) fully explains the origin of sexual offending, what I learned is that compulsive and addictive use of internet child sexual abuse material can contribute to escalating destructive behavior. David admitted, over the years, he was spending more time viewing adult sexual material and illegal material. David also had easy access to the victims' house. He admitted that he simply could not control this compulsive pattern/addiction.

I can only speculate that he was also searching for a way out of this. Over the last few months before arrest, on several occasions, he said, "I need to go to yeshiva," a place where young men dedicate themselves to the study of Jewish law and seek spiritual growth (yeshivas have limited to no internet and smart phone access). That never happened. Unfortunately, his Jewish faith was not strong enough to overcome his addiction. He was also not strong enough to ask for professional health, even though he understood that he had a problem and needed help. I only wish we had recognized his struggle and prevented what he did.

Your Honor, you are here to judge David for what he did, and we understand that this is how the justice system works. But this dark secret side of David, the side overtaken by serious mental and behavior problem, is not who David is as a whole human being. There is another, much larger side of David. Many longtime friends told us that David's crime is profoundly inconsistent with the person they had known for decades.

For many years, including during COVID, every Friday before Shabbat, David delivered the weekly meals prepared by my wife to Zvi, an elderly synagogue member and Korean War veteran. David never publicized it. In fact, very few people even knew. The synagogue also tried many times to give Zvi financial help, but he refused it. David was the only person Zvi trusted enough to accept assistance (not even the Rabbi could do so). Zvi gave David his hat. Zvi loved to wear it during the Jewish Holidays; the hat was very dear to him.

Another elderly member of our congregation was Hannah Kadetz, a Holocaust survivor. Similarly, David would bring food prepared in our home to Hannah. He would buy groceries Hannah asked for. He would help to clean her fridge and assess what she needs. He never asked for money. At her request, he also bought her an *etrog and lulav* for the holiday of Sukkot. These ritual items are not cheap, costing $70-80. During the last year of Hannah's life, she forgot to place her orders, so David simply purchased the items for her. He never told anyone about these acts of kindness. Because of David's help, she was able to stay at home. She died at of almost ninety-five years old in her apartment. These are some of the notes she wrote to David.

This is a traditional lullaby:


Ema Yakira Li Yakira
Ema Chavira Li Chavira
SHAI KATAN Agisha Lach
Ki Ani OHEV ATACH
OHEV ATACH = ...
I Love You !!!

Dear mother to me, dear
A small song I will sing to you
Because I love you, love you

I will smile at you, I will smile
A small gift I will present to
Because I love you, love you

A note to accompany the book Hannah gifted to David:


October 5th 2020 – 5781
My Dearest David:
I hope you enjoy this book and its wisdom
my favorite is "Bontze Schweig" by –
Isaac L. Peretz –
Yiddish man of Letters.
With my sincerest affection,
for Ever,
Hannah Kadetz

When David was 19-years old, my wife was sick for two months and eventually underwent emergency abdominal surgery. David was the one who took care of his mother after surgery, helping with all her daily needs for two weeks: he walked her in and out of the restroom, prepared meals, cleaned the bed, and gave her medications.

Over the years, David also donated thousands of dollars to Chabad of Blue Ash, Chabad of South Dakota, and other charities. Almost every morning after services at Chabad, David would call my wife to ask what groceries he should buy for the family at Kroger. He would call our friends and say: "Hi Renee, chicken breast is on sale. Do you want me to buy some for you?" At home, he took care of the laundry, vacuuming, yard work, and other day-to-day needs. He volunteered to cut the grass and shovel snow for neighbors who needed help, and he regularly delivered food to other community members.

Most importantly, Chabad became David's second home. He helped with many tasks the Rabbi asked him to do, no matter if it was just to help in the kitchen, prepare synagogue for meetings or Holidays. A few years ago, during Yom Kippur, the Rabbi gave an honor to David and called him to the Torah. The Rabbi acknowledged that David was the one who clearly deserved it.

As evidenced by the letters and testimonies shared by those who have known David for many years, and who care deeply about the Mangel family, when you separate David from the tragic and terrible mistake he made, people speak only about the good they experienced from him. He made people smile; he made them happy.

According to Jewish law, teshuva (repentance) is required to correct one's mistakes. It consists of these major steps: feel genuine regret, confess and accept responsibility, and commit never to repeat the sin again. It is a long road, but while in jail, I believe, David has begun the process of repentance and recovery. He spends about 4-5 hours a day studying Torah and other Jewish sources that available to him to reassess and reflect on his past and future.

Your Honor, there are no winners in this tragedy. The victims and their family have suffered tremendously, our family has been devastated, and David's actions has destroyed his own life. Everyone involved in the community has been affected by what happened. After David's arrest, Chana, the victims' mother, visited us and we cried together.

During the Jewish Holiday of Shavuot, both victims were in Cincinnati. The oldest sister approached me during shabbat and asked to give my wife a hug. A few days later, my wife was sitting on our porch. The youngest sister was walking by to visit her brother's family, who lives two houses from ours. She waved and then came over to see Marina. They had a long hug and my wife said: "I am praying for you and I love you."

Your Honor, David is the first-time offender. He admits what he did, fully accepts responsibility, and deeply regrets his actions. We respectfully ask the Court to consider a sentence that will allow David to receive appropriate therapy and treatment toward recovery; a sentence that will allow him to have a Jewish life and spiritual growth, and eventually to rebuild his life as a better person and reintegrate into society after he has paid his debt. We ask the Court for mercy.

David, right now, you are at the lowest point of your life. The only way from here is up. And you must remember this: we are your family. We will never abandon you and always support you every step of the way toward your recovery. We love you.

Sincerely,

Mark Mitsnefes (David's Father)
on behalf of Marina Sorochkina (David's mother) and Misha Mitsnefes (David's brother)

**ENDODONTICS NORTH**
**ERIC M. BRAMY, D.D.S., M.S.**
6900 Tylersville Road, Suite C
Mason, Ohio 45040

Telephone: (513) 754-0900

Your Honor,

I submit this letter on behalf of David Mitsnefes today. This was not an easy decision, given my longstanding and deep friendship with the victim's family. I care deeply for them, and I do not make these remarks lightly.

I have been a consistent member of the Chabad Center of Blue Ash for approximately 30 years. I was present as the Mangel children were born, grew up, and many eventually married. I was also there when the Mitsnefes family first joined our synagogue community.

About twenty years ago, I attended David's bar mitzvah after his family emigrated from communist Russia in pursuit of religious freedom. It was a deeply meaningful and inspiring occasion. Unlike many young boys who drift away after that milestone, David became a constant presence in synagogue life.

As a teenager, David was reserved, respectful, and thoughtful. He was never disruptive nor attention-seeking. He approached Judaism seriously, learning consistently and participating regularly. Through high school, college, and adulthood, he remained devoted to the synagogue and to our community.

Over the years, David became an integral part not only of our congregation, but also of helping the synagogue function day to day. He worked closely with Rabbi Mangel and contributed in countless practical ways to keeping the synagogue running. Even after graduating from the University of Cincinnati, he remained deeply involved while pursuing his professional career.

I also witnessed David's care for others. Alongside his mother, he organized and delivered meals to elderly community members and people in need. He walked those in need to their homes or cars, never expecting any recognition. He consistently showed concern for others in quiet, meaningful ways.

In the many years I have known David within our synagogue community, I never witnessed cruelty, aggression, anger, substance abuse, or reckless behavior. He did not drink, use drugs, or speak harshly of others. In keeping with Jewish teachings, he worked to avoid gossip and to treat people with dignity and respect.

What stood out most about David was how he made people feel. He greeted everyone warmly, remembered names, asked about family members, recalled birthdays and anniversaries, and

**ENDODONTICS NORTH**
**ERIC M. BRAMY, D.D.S., M.S.**
6900 Tylersville Road, Suite C
Mason, Ohio 45040
Telephone: (513) 754-0900

made a point to welcome others before beginning his own prayers. He had a rare ability to make people feel seen and important.

When I think of David, I think of someone disciplined, kind, observant in his faith, dependable, compassionate, and genuinely concerned for others.

For that reason, what has occurred is profoundly difficult for me to reconcile with the person I have known over two decades. The conduct at issue feels deeply inconsistent with the character I personally observed over many years.

I fully recognize the seriousness of this matter and the harm that has been caused. At the same time, I respectfully ask the Court to consider the totality of David's life, the many years in which he contributed positively to others, and whether a sentence that emphasizes accountability alongside treatment, supervision, and rehabilitation may best serve both justice and the prevention of future harm. Having known the Mitsnefes family for many years, I am confident that David's immediate family would provide steadfast support, encouragement, and practical assistance in any rehabilitative process the Court deems appropriate. Their commitment to his well-being and growth would be a strong source of stability and accountability in the future.

Respectfully,

Eric M. Bramy DDS, MS

Beatrice Ann Katz
4515 Perth Lane
Cincinnati, Ohio 45229
513-255-3741 (cell)
beakatzwrites@gmail.com

July 7, 2026

Judge Michael Barrett
US District Court
Southern District of Ohio

Dear Judge Barrett:

I have known David Mitsnefes for more than a decade. I am aware of the charges against him and the legal proceedings he is facing. Therefore, I wish to share with you my reflections on David's character and the behavior I've observed over these many years.

I first got to know David when my grandchildren were young and attending the Sunday Hebrew School program at Chabad Jewish Center in Blue Ash. Our grandchildren often slept over at our house on Saturday evenings, and we took them to school on Sunday mornings. David was always there as a volunteer, helping as needed. He greeted us at the front door as we arrived and helped create a welcoming atmosphere. Our grandson, especially, enjoyed a friendly, bantering relationship with David. My husband and I appreciated David's presence as an approachable role model for our grandson.

Later, I was impressed with David's kindness in helping an elderly widow — a Holocaust survivor — who was a dedicated member of our congregation at Chabad Jewish Center. She lived in a development just across Hunt Road from our synagogue. As an observant Jew, she would not drive on the Sabbath or on Jewish holidays. However, she was able to walk the relatively short distance to attend services. But as she got older, the walk became more difficult, and crossing the busy road became more intimidating. David made it his personal mission to help her. He went out of his way every week to walk her to and from synagogue. He did this for years. Although I wasn't aware of it at the time, I learned after her death that he also brought her food. His thoughtfulness and kindness were truly exceptional — like a devoted grandson.

Another way David had an impact on our congregational community was through his active support for daily prayer services. Several years ago, our rabbi set a

challenging goal of holding morning services every weekday at 7 am. (While Jews can always pray individually, traditional practice requires a quorum — or minyan — of 10 men for communal services.) Not only did David have the discipline and dedication to attend these services faithfully, he also was the point person for encouraging others to help make the minyan.

Over the years, my husband and I formed a close friendship with David's parents, who are very active members of our congregation. We would see them at services on Saturday mornings and holidays, and occasionally we were their guests for holiday lunches and dinners, giving us the opportunity to be with David in his home. He was always warm and friendly, with a quiet sense of humor that we enjoyed.

In March of 2025, we got to observe David on an extended trip. We were part of a large group of Jews from across the US who traveled to Israel for an educational and spiritual experience in the wake of the October 7 attack. David was part of the contingent from Cincinnati. Once again, the person we saw — for the entire length of the trip, in every circumstance — was mild-mannered, cooperative, always cheerful.

Having observed him in so many situations over so many years, I thought I knew David. Clearly there were things I did not know. Despite the shock of his arrest, I firmly believe that at his core, David is a decent young man, with a kind heart and a gentle soul. I hope the court will give thoughtful consideration to those important qualities when making a decision about him now.

Yours sincerely,

Beatrice Katz

Beatrice A. Katz

ELLIOTT POLANIECKI
8517 MEADOW BLUFF COURT
CINCINNATI, OHIO 45249
(513) 520-0257
e28p@aol.com

July 7, 2026

Honorable District Court Judge Michael R. Barrett
US District Court – Southern District of Ohio
Potter Stewart US Courthouse
100 Fifth Street – Room 239
Cincinnati, Ohio 45202

Re: USA v. David Mitsnefes (1:26-cr-00065)

Dear Judge Barrett:

You may recall my name from your days as a Hamilton County Prosecutor, back when I was doing some criminal defense work. (I just went "inactive" last week – now fully retired). I am writing to the Court concerning the upcoming sentencing of David Mitsnefes in the above-referenced case.

I met David about 20 years ago when the Mitsnefes family joined the Chabad Jewish Center, a synagogue in Blue Ash. Since then, I have shared attendance at its religious services and social functions with his parents, Dr. and Mrs. Mitsnefes; with David's older brother Misha; and with David, including regular attendance on the Sabbath and holidays.

As a relatively small congregation, Chabad's members all know each other, and through our mutual participation in the synagogue's services and programs, I have become well-acquainted with David. I have had many, many occasions to chat and share stories about work, current events, sports, and family with him. Thus, I was surprised and dismayed to learn of the facts leading to the charges in this case.

Please let me share with the Court the David Mitsnefes that I know:

When I arrive to synagogue for services, there is David to open the door, greet me graciously, and ask how I and my family are doing. He is part of the security team that ensures the safety of the congregation.

During prayers, David frequently chants from the Torah on behalf of the congregation, a task which requires preparation and skill.

After services, David assists with arranging the weekly lunch, then chats with me and his fellow congregants. He is always congenial and friendly, with an appropriate sense of humor.

The David that I know is dedicated to his employment and to Chabad. His attendance at synagogue is – if I may use the term – "rabbinical". He is at services at 7:00 a.m. almost every weekday, as well as Friday night, Saturday morning, and Saturday evenings – plus holidays.

And when he is not at Chabad, David is at his job. I know this because David worked in the underwriting department of the commercial lender where my own son was employed.

David Mitsnefes comes from a wonderful and loving family. He is an intelligent, honest, and respectful person. This terrible choice he made is not at all reflective of his background and character. Even during his incarceration, he has tried to maintain the traditions and obligations of his faith – in learning, in diet, and in prayer.

There is hope for the future of this young man. His family and fellow congregants are here to do whatever it takes to help him. I implore this Honorable Court to give David the chance he needs to overcome the mistakes he has made.

Respectfully,

Elliott Polaniecki

**Michael J. Samet**
**7860 Gwenwyn Drive**
**Cincinnati, Ohio 45236**

July 7. 2026

The Honorable Judge Michael R. Barrett
United States District Court
Southern District of Ohio

Dear Judge Barrett:

Please find this letter in support of leniency for David Mitsnefes.

I have known David since his childhood and have watched him grow into a most important member of our congregational community. His volunteer work for literally every congregational happening – both daily and event-focused – are exemplary and a crucial addition to our religious practice. He is always first in line to greet newcomers, volunteer for jobs both large and small, while generally bringing joy to our congregation through his genuine warm personality.

Having retired following a career in public health, I have seen firsthand the difficulty incarceration imposes on those with mental illness. David is unquestionably an individual who would be much better served through therapy and rehabilitation versus a lengthy prison sentence. This would allow him to heal and return to the productive role in our community and congregation he has previously filled – a most notable and rare outcome in these situations.

I am confident that with therapy, hard work and forgiveness, this could be an exemplary case illustrating the value of therapy over incarceration. I urge you to consider alternatives to incarceration to help return a healthy and happy David Mitsnefes to our congregation. I would be most happy to discuss any and all of this issue further.

Sincerely,

Michael J. Samet

From: Arnaldo Frydman
3350 N 37th Street, Hollywood, FL 33021

To: The Honorable Judge
Potter Stewart US Courthouse
100 Fifth Street, Cincinnati, OH 45202

Re: Character Reference for David Mitsnefes

Dear Judge,

I respectfully submit this letter in support of David Mitsnefes, whom I have known personally for approximately ten years. I understand that David is presently charged with serious offenses. My purpose in writing is to provide the Court with information concerning David's character, reputation, and conduct as I have personally observed them during approximately ten years of acquaintance.

I hold a doctoral degree in Chemical Engineering and was employed by the General Electric Co. when, in 2016, I began an assignment that required frequent travel and extended stays in Cincinnati, Ohio. I began attending the Chabad Jewish Center in Blue Ash, Ohio, for prayer services and community activities, where I met the Mitsnefes family. They graciously invited me to spend many Sabbaths in their home and regularly hosted me for Friday evening and Saturday meals. They even prepared a room for me adjacent to David's room. Over the years, I was welcomed to numerous family gatherings with the Mitsnefes, including birthdays and holiday celebrations. As a result, I had the privilege of developing a close relationship with the family and of observing David over an extended period and in a variety of personal and community settings.

David was a regular attendee at daily prayer services at the Chabad Jewish Center and weekly study sessions at the Cincinnati Kollel, where Jewish sacred texts and traditions are studied. He frequently served as a greeter at the synagogue entrance, welcoming congregants and visitors with warmth, kindness, and a genuine smile.

Throughout the years I have known David, I have observed him to be a kind, considerate, and community-oriented individual. I personally witnessed him assist and support numerous members of the community, including myself on several occasions. Among his many acts of service, he regularly delivered meals to elderly members of the community and devoted substantial amounts of his personal time to assisting the Chabad Jewish Center with information technology needs, event preparation, and various organizational responsibilities. To my knowledge and observation, David performed these services voluntarily and without compensation, recognition, or expectation of personal benefit. He consistently demonstrated generosity, selflessness, and a sincere concern for the welfare of others.

During the entire period of our acquaintance, and despite having observed David in a wide variety of circumstances over approximately ten years, I have never personally observed him act violently, engage in physical altercations, use foul language, display aggressive or inappropriate behavior, or behave in a threatening manner toward others.

Based on my personal observations and interactions with David over approximately ten years, he consistently conducted himself with patience, courtesy, and respect. I have found him to be honest, dependable, responsible, and respectful in his dealings with others. Within the communities in which I have known him, he has been regarded as a reliable friend and a person upon whom others could depend. While I can speak only to my own experiences and observations, those experiences have only been positive throughout the many years I have known David.

I respectfully offer these observations for the Court's consideration. Should the Court require any additional information concerning my experiences with or observations of David Mitsnefes, I would be willing to provide further clarification.

Respectfully,

Arnaldo Frydman

Arnaldo Frydman

Date: 06/24/2026

**Sherry Erb**
17 Youngs Ct
Newport, KY 41071
859-486-9530

July 14, 2026

**The Honorable Michael R. Barrett**
United States District Court
Southern District of Ohio

**Re: Character Reference for David Mitsnefes**

Dear Judge Barrett,

I am writing in support of my friend, David Mitsnefes, whom I have had the privilege of knowing for the past three years through our synagogue community. During that time, I have come to know David as a kind, generous, and deeply caring individual whose character has had a meaningful impact on those around him.

When my husband and I first attended Chabad, David was one of the first people to welcome us. Embracing a new community can be intimidating, but David immediately made us feel accepted and included. He consistently went out of his way to introduce us to others, answer our questions, and help us feel at home. His warmth and genuine concern for people are qualities that stand out to everyone who knows him.

David also served on our synagogue's security team and took that responsibility seriously. He had an extraordinary ability to remember names, faces, vehicles, and details that helped keep our congregation safe. More importantly, he combined vigilance with kindness. He made people feel both protected and welcomed, a rare balance that contributed greatly to our community.

Over the years, my husband and I have shared many Shabbos meals with David and his family. Their home was always open to others, and the hospitality, friendship, and sense of community they provided touched many lives. I have witnessed firsthand David's devotion to his family, his faith, and the people around him.

David was always the person you could count on when help was needed. Whether it was picking up groceries for someone who was unable to get out, helping a friend in a difficult situation, or coming to unlock the synagogue at an unusually late or early hour because someone had forgotten something, he never hesitated to lend a hand. He consistently put the needs of others before his own convenience and was the kind of person who could be relied upon without question.

I fully respect the seriousness of the matter before the Court and do not seek to excuse the conduct that has brought David to sentencing. However, I believe it is equally important for the Court to know that David is much more than the mistakes he has made. He is a person who has contributed positively to his community, helped others without expecting anything in return, and has the support of many people who believe in his ability to learn from this experience and move forward in a positive way.

I respectfully ask the Court to consider David's character, the good he has done for others, and his potential for rehabilitation when determining an appropriate sentence.

Thank you for your time and consideration.

Respectfully,

**Sherry Erb**